# Ellen M. Gates v. Winfield P. Gates, Jr.

[716 A.2d 794]

No. 96-412

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed March 27, 1998

Motion for Reargument Denied June 11, 1998

*Lon T. McClintock* of *Jacobs, McClintock & Scanlon*, Bennington, for Plaintiff-Appellant.

*Winfield P. Gates, Jr.*, pro se, Bennington, Defendant-Appellee.

**Skoglund, J.** Mother Ellen M. Gates appeals the decision of the Bennington Family Court, which denied her request for modification of a parental-rights-and-responsibilities order. Mother contends that the court erred when it (1) concluded that there was no basis to modify either the parties' shared-legal-responsibilities agreement or the visitation rights of father, Winfield P. Gates, Jr.; (2) failed to bifurcate the modification hearing; and (3) ordered the parties to submit future disputes regarding shared-legal responsibility to mediation and binding arbitration before seeking judicial relief. Father cross-appeals a part of the decision that conditioned the resumption of his visitation rights with the children upon the payment of half of mother's attorney's fees and court costs and his completion, to the court's satisfaction, of a parenting-and-empathy-raising course. We affirm the court's denial of mother's motion to modify the parties' shared-legal-responsibilities agreement and the parent-child-contact agreement. We strike, however, the court's order that the parties first attempt mediation or arbitration before bringing future disputes to the court. In addition, we strike the court's requirement that father must first pay mother's attorney's fees and court costs before he can resume visiting with his children.

The parties were divorced on February 12, 1993, after thirteen years of marriage. Pursuant to a stipulation developed by the parties with the help of two mediators, the court awarded mother physical rights and responsibilities for the parties' three children. Legal rights and responsibilities, however, were to be shared by the parties. In addition, father was awarded visitation with the children. The stipulation and resulting divorce order included a provision wherein the

parties agreed to seek mediation, arbitration, or judicial remedy, in the event they could not resolve a disagreement themselves.

The parties soon experienced serious difficulty communicating with one another, and numerous conflicts arose between them. Less than a year after the divorce, mother was granted a relief-from-abuse order prohibiting father from communicating with her, except with regard to the children. In an attempt to facilitate communications, the parties began using a journal, which was mailed back and forth between them, to discuss issues involving the children.

The conflicts between the parties concerning the children, however, continued unabated. Over the next few years, both parties petitioned the court on numerous occasions, and the court twice amended the final divorce order. The first amended order, of January 1994, which was the result of a stipulation reached by the parties after the father sought a modification of parental rights, provided greater specificity regarding parent-child contact. It explicitly incorporated by reference the majority of the divorce order, including the section dealing with dispute resolution. Shortly after the issuance of the first amended order, mother was granted an extension of the relief-from-abuse order, which retained all of the terms of the original relief-from-abuse order.

Less than a year later, after mother filed a motion for modification of parental rights, the final order was amended again by stipulation of the parties. The second amended final order of November 1994 again added greater specificity regarding parent-child contact. Although quoting nearly verbatim the provisions of the first amended final order, this order did not include the section dealing with dispute resolution.

In addition to the motions to amend or extend the previous court orders, each party asked the court, on several occasions, to find the other party in contempt for violating one or another of the various court orders. For example, in May 1995, mother filed a motion to find father in contempt for failure to abide by visitation schedules. Two months later she amended the contempt motion and claimed that father failed to return their oldest son, then fifteen years old, on the day specified in the visitation schedule. Furthermore, mother reported this incident to the Bennington County State's Attorney and the police, and father was charged with custodial interference.[1] In

---

[1] This charge was still pending on June 24, 1996, when the court issued the order that is the basis of this appeal.

July 1995, concurrent with filing the amended contempt motion, mother also filed two motions — one for modification of parental rights, requesting that the court grant her sole legal responsibility for the children, and the other to modify father's visitation rights.

The court subsequently notified both parties that it would hear both mother's contempt petition and motions to modify in a bifurcated hearing. The court indicated that it would first hear the contempt petition and the "alleged basis for modification of the child custody order." If mother met the required burden of proof concerning the modification order then, at a later date, the court planned to hear evidence concerning the "best interest of the children." After the initial hearing, the court found that father had willfully, intentionally, and deliberately violated a court order and, therefore, was in contempt of court. Because he was in contempt of court, the court ordered that father's visitation rights be suspended until he completed an approved parenting-and-empathy-raising course and paid half of mother's reasonable attorney's fees and court costs.

In addition, the court found that no real, substantial, and unanticipated change of circumstances had occurred and, therefore, the court denied mother's motions to modify the shared-legal-responsibilities agreement and to limit or extinguish father's visitation rights. The court also found that the parties' original agreement failed to contain a dispute-resolution plan and, therefore, ordered that the parties attempt to resolve any future disputes through mediation or binding arbitration before resorting to the court system. These appeals followed.

I.

Mother first contends the court abused its discretion by finding that there was no substantial change in the circumstances to support a modification of the parties' shared-legal-responsibility agreement or father's visitation. Specifically, she claims that the inability of the "log" to facilitate communication between the parties caused a substantial change in circumstances. We conclude, however, that the court did not abuse its discretion. The parties' allegations concerning the circumstances existing from the time of the divorce, the evidence presented at the modification hearing, and the court's findings, document a situation that has not changed substantially.

This Court will uphold the trial court's decision concerning whether there has been a substantial change in circumstances "unless 'the discretion of the lower court was exercised on grounds or for

reasons clearly untenable or to an extent clearly unreasonable.'" *Hayes v. Hayes*, 144 Vt. 332, 336, 476 A.2d 135, 138 (1984) (quoting *Nichols v. Nichols*, 134 Vt. 316, 318, 360 A.2d 85, 86 (1976)); accord *deBeaumont v. Goodrich*, 162 Vt. 91, 98, 644 A.2d 843, 847 (1994). A motion to modify a decision-making arrangement "does not entail the violent dislocation realized by a change in physical custody," *Kilduff v. Willey*, 150 Vt. 552, 555, 554 A.2d 677, 679-80 (1988), and, therefore, the threshold requirement of finding that a substantial change has occurred is not as high. Still, there is a threshold to be satisfied and the burden is heavy. See *id.* at 556, 554 A.2d at 680.

The parties initially agreed, after mediation, to the shared-legal-custody arrangement, and they again agreed by stipulation to continue this arrangement in the two amended divorce orders. From the time the divorce was final, the parties were involved in an antagonistic and contentious dispute concerning the children that was highlighted by the dearth of constructive and effective communication. A breakdown in communication between the parents may suffice as a substantial and unanticipated change. See *id.* at 555, 554 A.2d at 680. In this case, however, it appears that communications were consistently poor.

Thus, the court did not err in holding the parties to their original agreement, as modified by stipulation twice, by finding no substantial change in the circumstances of their parenting situation. We recognize that the parties' decision to share legal custody may have made their lives as ex-spouses more difficult, but the ineffectiveness of the "log" as a method of communication requires that they try something else, not that the court alter the order establishing legal responsibility for the children's lives.

Further, mother did not seek to modify the shared legal responsibilities for the children based on a claimed inability of the parents to decide religious, educational, medical or other issues included in the scope of an award of legal responsibilities. See 15 V.S.A. § 664. In fact, the court found just the opposite — that the parties have been able to effectively cooperate in such areas. For example, they have sought counseling for all the children for emotional issues, have continued to agree on a counselor and on the need for counseling for the eldest child, have agreed to a transfer of schools for their oldest son, and are supportive of his academic efforts. Mother's only complaint about the exercise of a specific legal responsibility involved father's decision to take his eldest son to get a driver's license without first notifying mother of his intentions. This is not the basis for injecting the court again into the lives of the children.

■ Because we find no support for mother's claim that a substantial change in material circumstances has occurred, we conclude that the court did not abuse its discretion in declining to modify the shared-legal-responsibility agreement or father's visitation rights.

## II.

Mother next contends that the court erred by failing to bifurcate the hearing to determine whether to modify the parties' shared-legal-responsibilities agreement and the father's visitation, as it had declared it would do. Specifically, she claims that the court went beyond consideration of issues of substantial change and included in its decision a consideration of the children's best interests. We find no reversible error, if any error at all.

Before a court can modify a custody or parental-rights-and-responsibilities order, the moving party must first prove that a "real, substantial and unanticipated change of circumstances" has occurred. 15 V.S.A. § 668. Only after such a finding may the court move on to the question of what arrangement is in the best interests of the children. See *id.*; see also *Kilduff*, 150 Vt. at 553, 554 A.2d at 678; *Hayes*, 144 Vt. at 335-36, 476 A.2d at 138. This two-step approach ensures that the Legislature's intent to keep the best interests of the children paramount is satisfied by precluding courts and opposing parties from easily changing final orders and, thereby, causing disruption in the children's lives. See *Hayes*, 144 Vt. at 336, 476 A.2d at 138.

Pursuant to V.R.F.P. 4(j), the court, ruling on a motion to modify, may bifurcate the proceedings. During the first phase, the court should "determine and make findings as to whether there has been a real, substantial and unanticipated change of circumstances." V.R.F.P. 4(j). If a substantial change is found, the court, during the second phase, may then consider what is in the best interest of the children. See *Hayes*, 144 Vt. at 335-36, 476 A.2d at 138. If no change is found, however, the court may dismiss the motion without reaching the merits of the action. There is no bright-line test for determining whether the required change in circumstances has occurred. See *deBeaumont*, 162 Vt. at 97, 644 A.2d at 847 ("There are no fixed standards for determining what meets this threshold."). Without question, the distinction between evidence that the court is proscribed from considering and evidence that it is permitted to assess during the first phase is subtle. In anticipation of this potential difficulty, we have warned the courts that they "must not confuse [their] analysis of

changed circumstances with [their] determination of the children's best interests." *Id.* And yet, we have held that the court must also determine whether the new circumstances have such an effect upon the children that it renders the change substantial. See *Wells v. Wells*, 150 Vt. 1, 4, 549 A.2d 1039, 1041-42 (1988) ("'There can be no fixed standards to determine what constitutes a substantial change in material circumstances [and, therefore, the] court is guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed.'" (quoting *Gerety v. Gerety*, 131 Vt. 396, 402, 306 A.2d 693, 695 (1973))). Thus, while the court is not permitted to decide what is in the best interests of the children during the first phase of the hearing, it may still consider the impact of the change upon the children in deciding whether the circumstances have substantially changed.

In this case, the court issued an unambiguous pretrial order bifurcating the hearing. At the first phase of the bifurcated hearing, the court considered mother's claimed change in circumstances — the parties' inability to communicate by use of the "log." The court found that while the parties were not using the "log" to communicate candidly in the best interests of the children, "the problems with the 'log' cannot constitute a substantial basis for modification." As was noted previously, this conclusion was not an abuse of discretion.

In its analysis, the court made reference to 15 V.S.A. § 666, which requires a court to presume that "[a]ny agreement between the parents which divides or shares parental rights and responsibilities" is in the best interests of the child. The gravamen of mother's complaint is that the court considered the children's best interest during the first phase of the hearing — thus failing to bifurcate the hearing as the court initially said it would. Specifically, mother points to the court's statement that:

> Revisiting [§ 666], . . . , the Court cannot find it is in the *children's best interest* to have the defendant excluded from 'legal responsibility' decisions. He is vitally interested in his children's upbringing, even if misguided. Further, the children love him and rely on his wisdom when he is providing it in a wholesome manner.

(Emphasis added.)

Admittedly, the court's reference to the children's best interest is confusing and, at first glance, may appear to impermissibly

expand the limited scope of the initial phase of the bifurcated modification hearing. Because the evidence and the findings support the court's conclusion that the alleged change was not substantial in nature, the court's subsequent discussion of what is in the best interest of the children is superfluous and, therefore, does not render the court's initial finding that there was no substantial change in the circumstances invalid.[2]

The court also denied mother's motion to modify father's visitation, finding no change of circumstances sufficient to grant her request. It did, however, find father in contempt for his violation of earlier child-contact orders. The court punished father's contempt by suspending his parent-child contact until he completed a parenting-and-empathy-raising course. Thus, the court chose to require further education of father rather than abridge his parent-child-contact rights. This was within the court's discretion and we find no error.

### III.

Mother also contends the court exceeded its authority when it ordered that, in the future, if the parties experienced difficulties in communicating about their legal responsibilities that they seek mediation and, should mediation fail, that they submit the matter to binding arbitration before resorting to the court for relief. We agree.

The court noted that the parties' agreement on shared rights and responsibilities, as reflected in the second amended order of divorce, failed to contain a dispute-resolution provision and opined that 15 V.S.A. § 666 requires inclusion of a dispute-resolution mechanism in all parental-rights-and-responsibility agreements. Mother faults the court with failure to refer to the original divorce order which

---

[2] We recognize that escalating warfare between parties may, in certain circumstances, justify modification of a parenting agreement. In this case, however, after six pages of docket entries and twenty-two motions on various matters filed by both parties, the majority recognizes that no court order will ever remove the antagonistic bitterness that these parents choose to bring to their interactions or give these children parents who will respond to one another with dignity and respect. The court has to work with the family as presented.

Furthermore, the dissent asserts that, in order to modify the divorce order to require dispute resolution, the court had to have found a real, substantial, and unanticipated change of circumstances. While we find that portion of the court's order requiring ADR to be error as discussed in section III of this opinion, we do not give the provision the significance bestowed upon it by the dissent. The appearance of an ADR requirement in this court's order should not be interpreted as a finding of a real, substantial, and unanticipated change of circumstances but, rather, the court's interpretation that such a provision was required by 15 V.S.A. § 666.

contained an alternative-dispute-resolution (ADR) provision. While we agree with the court's conclusion that the second amended order contains no method to settle disputes, notwithstanding the original agreement of the parties to submit disputes to mediation, arbitration, or the court, we reject the court's solution to resolve future disputes.

Two of the main goals of ADR are to (1) allow the parties to settle their dispute and (2) *"avoid* the courts," *Thorgaard Plumbing & Heating Co. v. County of King,* 426 P.2d 828, 833 (Wash. 1967) (noting that avoidance of court is the purpose of arbitration), and, thus, potentially avoid the stricter formalities, higher costs, and longer delays associated with litigation. See *State v. P.G. Miron Constr. Co.,* 512 N.W.2d 499, 504 (Wis. 1994). For the same reasons, we acknowledge the crucial role that ADR processes play in settling disputes in Vermont. See generally, The Governor's Commission on Dispute Resolution, *Dispute Resolution in Vermont* (1994) (summarizing ADR processes available in Vermont and recommending improvements). Furthermore, we note that Vermont has a long history of relying on ADR mechanisms, see *id.* at 6, and therefore conclude that ADR is a welcome, necessary, and complementary part of an integrated and healthy Vermont community.

■ In this case, however, the court's order can not stand. First, the order permits the parties to return to court after mediation has failed, but only after submitting the matter to binding arbitration. A court may not order the parties to submit their future disputes to arbitration without a voluntary agreement of the parties concerned, or a statute or rule authorizing such an order. See, e.g., *Tracer Research Corp. v. National Envtl. Servs. Co.,* 42 F.3d 1292, 1294 (9th Cir. 1994) ("Notwithstanding the federal policy favoring it, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960))); *Allred v. Educators Mut. Ins. Ass'n,* 909 P.2d 1263, 1265 (Utah 1996) (statute permits court to order parties to submit future disputes to arbitration if both parties agree in writing); *Employers Ins. of Wausau v. Jackson,* 527 N.W.2d 681, 687 (Wis. 1995) (statute authorizes court to order parties to arbitration if one party fails, neglects, or refuses to perform under a written arbitration agreement); *Kelm v. Kelm,* 623 N.E.2d 39, 42 (Ohio 1993) (court required to order ADR based on written antenuptial agreement to arbitrate future disputes regarding domestic relations matters); New Motor Vehicle Arbitration, 9 V.S.A. §§ 4170-4181 (re-

quires disputes concerning automobile warranty problems to be heard by an arbitration board).

Further, the order contains no flexibility to accommodate emergency situations where time may be of the essence. It is certainly understandable that the court would seek to divert the parties' hostilities to another forum. As written, however, this provision exceeds the court's authority.

Therefore, we strike that portion of the court's order that states:

> [I]n the future should difficulties in communication arise with regard to "legal responsibility" the parties will first seek to mediate the matter within 30 days and should that fail they shall submit the matter to binding arbitration. They shall bear all costs of such processes equally and only failing binding arbitration shall the matter be returned to Court with regard to necessary communication about the children's "legal responsibility."

## IV.

Finally, father, in his cross-appeal, contends that the court abused its discretion by conditioning visitation with his children upon his payment of half of mother's attorney's fees and court costs.[3] We agree.

In Vermont, the legislative intent behind granting noncustodial parents the right to visit with their children is clearly established. Section 650 of Title 15 states that:

> The legislature finds and declares as public policy that after parents have separated or dissolved their marriage it is in the best interests of their minor child to have the opportunity for maximum continuing physical and emotional contact with both parents, unless direct physical harm or significant emotional harm to the child or a parent is likely to result from such contact.

---

[3] Father, appearing pro se, noted in his brief that "[t]he other condition of this decision, that the [father] pay one half of the [mother's] $9,000 attorney's fees, before he can resume visitations with his children is ludicrous and ridiculous given the fact that the Defendant has an annual income of less than $11,000." While the statement does not clearly indicate that father is appealing the court's order, we will treat it as an appeal. See *Beyel v. Degan*, 142 Vt. 617, 619, 458 A.2d 1137, 1138 (1983) (we will consider issues raised by pro se litigant even though he failed to properly or clearly brief issue in his appeal).

Because of this mandate, the suspension or rescission of a noncustodial parent's visitation rights is a grave matter and one not to be entered into lightly. See *Breznick v. Breznick*, 127 Vt. 80, 82-83, 238 A.2d 643, 645-46 (1968) ("[T]he law attempts to preserve . . . the relationship between each parent and child, in spite of the legal separation [and, therefore, unless] some sufficient opposing cause, relating to the welfare of the child, is shown, a visitation privilege of some sort is the right of a parent as a matter of course."); *Cleverly v. Cleverly*, 147 Vt. 154, 157, 513 A.2d 612, 614 (1986) ("A visitation privilege of some sort is the right of a parent unless good cause exists to deny visitation."); see also *In re Duckworth*, 146 A.2d 365, 367 (Pa. Super. Ct. 1958) ("It is against public policy to destroy or to limit the relation of a parent and child [and, therefore, as] a general rule, both parents should see their children and the estrangement of parent and child should be avoided wherever possible.").

■ Granting, modifying, or denying visitation "is within the discretion of the trial court and will not be reversed 'unless its discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented.'" *Cleverly v. Cleverly*, 151 Vt. 351, 355-56, 561 A.2d 99, 102 (1989) (quoting *Loeb v. Loeb*, 120 Vt. 489, 492, 144 A.2d 825, 827 (1958)). We conclude, however, that conditioning father's visitation upon his payment of half of mother's attorneys' fees and court costs is unreasonable. While we have not had the opportunity to address this issue before, it is analogous to prior cases where we have struck down conditioning visitation upon the payment of outstanding child support and alimony payments. See *Boone v. Boone*, 133 Vt. 322, 323-24, 340 A.2d 53, 54 (1975) ("Denial of visitation rights where the record indicates the primary purpose to be punishment of the father for failure to pay support money for his child is not justifiable."); see also *Block v. Block*, 112 N.W.2d 923, 927 (Wis. 1961) ("The paramount reason for visitation is the benefit to be derived by the child from associating with its parents and its welfare should not be jeopardized by an order conditioned upon payment of support money or alimony even though such order might prove effective as a collection device."). The court's order was an effective method of ensuring that father would pay mother's bills and was also imposed as a punishment for father's contempt of the court's earlier order; however, the restriction goes too far and we can find no justification for its imposition.

Further, taking away visitation from a parent necessarily takes it away from a child as well. Although father was in contempt of the

court's order, his failure to pay the attorney's fees as ordered does not make him an unfit parent. Finally, the payment of mother's attorney's fees and court costs does not have any rational relationship to the best interests of the children. See *Breznick*, 127 Vt. at 82-83, 238 A.2d at 645-46. Unless there is a finding that the payment of attorney's fees and court costs is related to the party's fitness as a parent or that it directly affects the welfare of the children, we will strike such an order as being arbitrary, unreasonable, and impermissible.

 To be clear, the contempt-of-court fine stands; however, payment of the fine is not required before the father may resume visitation. Once he successfully completes a parenting-and-empathy-raising course to the court's satisfaction, his visitation should be reestablished.

At oral argument, father raised for the first time his request that we reverse the court's finding of contempt based on the fact that the eldest son was now residing with him, apparently with the acquiescence of the mother. This subsequent turn of events does not alter the facts as found by the court that the father, at the time of the hearing on the contempt motion, was in contempt of the court's order. Therefore, father's request is denied. See *Hall v. Department of Social Welfare*, 153 Vt. 479, 487, 572 A.2d 1342, 1347 (1990) (failure to raise issue at earliest opportunity precludes Court from considering it on appeal).

*The denial of the motion to modify parental rights and responsibilities is affirmed; the provisions requiring the use of alternative-dispute-resolution methods before the parties may resort to the court and father's payment of his contempt fine prior to reestablishment of his visitation rights are stricken.*

**Dooley, J.,** dissenting. The majority recognizes that "at first glance" the family court's reliance on the best interest of the child to determine whether a change of circumstances in the custody situation existed "may appear to impermissibly expand the limited scope of the initial phase of the bifurcated modification hearing." It fails to recognize that the court's action was also not proper at any other glance. Unfortunately, the majority's action leaves this litigation, and the parties, in status quo, the worst outcome possible. Accordingly, I dissent from the affirmance of the denial of the motions to modify.

Although the majority summarizes the facts and the proceedings below, I think some amplification is necessary. As the majority notes, these parties have been in continuous conflict and litigation since their

February, 1993 divorce. Even after the initial modification of the divorce order, and the abuse prevention orders, the parties continued to return to court. Indeed, it is difficult to find any time when some request for court intervention was not pending. The docket entries before us, covering the period between September 21, 1994 and July 24, 1996, go on for most of six pages. They show twenty-two motions filed during that period, including eight for contempt or enforcement or both. This does not include the criminal litigation arising out of defendant's prosecution for custodial interference.

On July 1, 1995, plaintiff moved to modify the order establishing joint parental rights and responsibilities for the three children and defendant's visitation order. She requested that defendant's role in the children's lives be reduced to limited, supervised visitation. On the same day, she moved to hold defendant in contempt because, among other things, he used telephone contact to disparage plaintiff as a custodian and refused to return the oldest child from visitation. The motion to modify was amended in September to provide more specificity.

On October 10, 1995, the family court judge sent the parties a letter which stated in part:

> As I indicated earlier, I intend to bifurcate this hearing. The first segment will deal only with the contempt and the alleged basis for modification of the child custody order. If as to the latter motion the burden of proof is carried, the court would then schedule the "best interests" phase of the hearing and seek the report and evaluation by Dr. Halikias.

Dr. Halikias is a psychologist who the family court judge apparently selected for a family evaluation.

Plaintiff's motions were heard on December 8, 1995, March 26, 1996 and April 22, 1996. On June 27, 1996, the court issued its order holding defendant in contempt and denying the motions to modify. The court's entire rationale for denying the motion to modify the parental-rights-and-responsibilities order was:

> Revisiting that statute, and at present, the court cannot find it is in the children's best interest to have the defendant excluded from "legal responsibility" decisions. He is vitally interested in his children's upbringing, even if misguided. Further, the children love him and rely on his wisdom when he is providing it in a wholesome manner. In short, the

problems with the "log" cannot constitute a substantial basis for modification and the plaintiff's motion is DENIED.

The rationale for the decision to deny the motion to modify the visitation order is spread over the modification section of the decision. It appears to be in the following sentences:

> However, the children love the defendant and will benefit from wholesome and appropriate contact with him once he is able to participate in the same.
>
> . . . .
>
> In so far as the plaintiff seeks to limit or extinguish the defendant's right to contact with his children, that is DENIED. It is appropriate that at present his right be suspended for contact with his children until he has complied with this court's contempt order. . . . Until he prepares himself to do so, without reservation, the visits will neither be productive for him or for the children.

The contempt order required defendant to complete a parenting and empathy-raising course and to pay plaintiff's attorney's fees and the court costs associated with the proceeding.

I have no difference with the majority over the applicable law. The governing statute requires that the court engage in a two-step inquiry in determining a motion to modify. See 15 V.S.A. § 668. The moving party must first show that there has been a "real, substantial and unanticipated change of circumstances," *id.*, and then that modification is in the best interest of the child. See *deBeaumont v. Goodrich*, 162 Vt. 91, 95, 644 A.2d 843, 845-46 (1994). Only if the court finds a change of circumstances may it move on to consider the best interests of the child. See *Kilduff v. Willey*, 150 Vt. 552, 553, 554 A.2d 677, 678 (1988). Although the burden of showing a change of circumstances to warrant a shift of physical custodian is "heavy," see *id.*, the burden of showing such a change to modify a legal responsibility order is easier. See *id.* at 555, 554 A.2d at 679-80; *Pill v. Pill*, 154 Vt. 455, 460, 578 A.2d 642, 645 (1990).

Because the analysis involves two distinct steps, our rules authorize the court to bifurcate the presentation of evidence:

> If a hearing is to be held on a motion to modify, the court may bifurcate the hearing and first determine and make findings as to whether there has been a real, substantial and unanticipated change of circumstances; if no such change is

> found, the court may dismiss the motion without reaching
> the merits of the action.

V.R.F.P. 4(j). The point of the rule is to allow the court to require the change of circumstances showing "before the court entertains evidence on the merits of the ruling which the moving party seeks to change." Reporter's Notes to 1991 Amendment to V.R.F.P. 4(j). It is undisputed that the court was operating under Rule 4(j) in this case.

The court's decisions on the motions to modify are clearly based on whether modification is in the best interest of the children and resolve the merits of the motion rather than the threshold question of change of circumstances. The modification of the legal responsibility order was denied because the children love defendant and rely on his wisdom. The modification of the visitation order was denied because the children will benefit from appropriate contact with defendant.

In the ordinary case, both of these decisions would be sustainable, and they may ultimately be the correct decision in this case. They are not sustainable, however, when the court has bifurcated the proceeding and is specifically required to make findings on whether there was a real, substantial and unanticipated change of circumstances and has failed to do so. See *Pill*, 154 Vt. at 460, 578 A.2d at 645 ("court must make findings sufficient to satisfy the threshold requirement"); *Kilduff*, 150 Vt. at 555, 554 A.2d at 680 ("court must make specific findings" on issue of whether breakdown of communication is a change of circumstances). Nor can we sustain the result when plaintiff relies on the bifurcation order to hold back evidence on the best interest of the children, only to find that the court's decision is based on its view of the children's interests.

As I read the majority decision, it has four answers to the above analysis: (1) the family court found that plaintiff failed to show a real, substantial and unanticipated change of circumstances with respect to both motions to modify; (2) because the evidence supports the court's decision that there was no change of circumstances, the court's findings about the best interest of the children are harmless and superfluous; (3) there never was a change of circumstances with respect to the legal responsibilities order because the parties never could communicate; and (4) the family court found that the parties could cooperate on decisions within the scope of their legal responsibilities.

My first disagreement with the majority decision is that its rationale relates solely to the motion to modify the legal responsibilities order. Contrary to the majority decision, the motion to modify

visitation was not based on the parties' failure to communicate, but instead on defendant's constant undermining of plaintiff's custody and his refusal to return the oldest child to plaintiff. We have recognized that violations of custody and visitation orders can be a change of circumstances. See *Kilduff*, 150 Vt. at 556, 554 A.2d at 680; *Wells v. Wells*, 150 Vt. 1, 4, 549 A.2d 1039, 1042 (1988). Indeed, in this case, in light of the family court's conclusion that defendant was in "knowing, willful violation" of the court's order on numerous occasions, I would hold that there are changed circumstances as a matter of law. In any event, despite the bifurcation, the court clearly rendered its decision based on the best interests of the children in violation of the rule.

I also disagree with the majority's four reasons for affirmance of the legal rights and responsibilities order. They rest on the fiction that the family court concluded that no real, substantial and unanticipated change of circumstances existed and the rest of its findings and conclusions can be ignored. In fact, there is no finding or conclusion on whether a change of circumstances has occurred. All of the relevant statements are quoted above. The only statement that comes close to the majority's characterization is the family court conclusion that the problems with the log "can not constitute a substantial basis for modification." That statement says nothing about change of circumstances. Cf. *Pill*, 154 Vt. at 459, 578 A.2d at 644 (subsidiary findings are not equivalent of finding that there was a real, substantial and unanticipated change of circumstances). More important, it follows immediately after the discussion of what is in the best interest of the children and starts "In short" to indicate that it is a summary of that discussion. We cannot fairly find from the court's statement that it concluded that no real, substantial and unanticipated change of circumstances existed.

There is a more fundamental reason why the majority cannot be correct. *The family court modified the divorce order, albeit on dispute resolution, and had to find a real, substantial and unanticipated change of circumstances to do so.* That modification is based on the inability of the parties to resolve their differences, exactly the grounds asserted for the motion to modify the legal responsibilities order.

Nor can I agree with the majority's other characterizations of the record, as used to support its decision. Nowhere did the family court find that the parties are able to effectively cooperate with respect to "religious, educational, medical or other issues included in the scope

of an award of legal responsibilities." Nor is there any finding that the parties never could communicate by way of the log. The court's finding is "that the 'log' has *now* impaired their ability to communicate" (emphasis supplied), a choice of words that at least implies that the breakdown did not always exist. Moreover, even if we had the power to supply findings where they are missing, we cannot do so in this case because we have only a partial transcript of the evidence.[1]

Although I agree with the majority that we cannot affirm the family court's requirement of binding arbitration or its denial of visitation until defendant paid plaintiff's attorney's fees, the situation in which we are leaving these parties heightens the concerns behind this dissent. These parties are locked in a destructive pattern of intense conflict and continuous litigation that is consuming them and all their economic resources and alienating their children. In a disturbing demonstration that the present situation is not working, one of the children has filed in this Court an "emergency" motion to modify the custody order.[2] The family court recognized that the status quo was unacceptable and fashioned an order to improve the situation. I doubt that it believed that the second choice was to do nothing, but that is exactly the result of today's decision.

To the extent that the majority opinion addresses the merits of this dispute, its view appears to be that when parties are in open warfare, more warfare can never be a change of circumstances to allow the court to intervene and try to bring order, especially to protect the interests of the children. This is a very disappointing message to the parties and children in this case, and a particularly disappointing message to the many parents who come to our family courts seeking stability in the lives of their children. I dissent.

**Morse, J.,** dissenting. I agree with Justice Dooley that the parents' existing legal relationship to the children is the "worst outcome possible." On this record, I cannot imagine any good coming from continued shared legal rights and responsibilities.

I am dismayed also that we are creating a rule of law that there cannot be a "significant change of circumstances" if the custodial arrangement was bad from the start. If these parents made a mistake

---

[1] The parties could not afford a transcript and did not order one. However, a transcript of the first three days of the evidentiary hearing was produced by mistake and is before us.

[2] The motion was treated as a request for extraordinary relief which was referred back to the family court.

— a colossal one it seems from the facts — by agreeing to shared legal custody, we ought not fall victim to the illusion that perpetuating the wrong will somehow make it right.

In a related area of juvenile law, the concept of "stagnation," denoting a continuation of the status quo, is deemed a "change of circumstances" to allow termination of parental rights. See *In re J.R.*, 164 Vt. 267, 271, 668 A.2d 670, 673 (1995) (continuing risk supports finding of material change of circumstances).

In truth, stagnation is not a change in the facts, but the failure of anticipated improvement in the parent-child relationship. See *In re D.B.*, 161 Vt. 217, 219, 635 A.2d 1207, 1209 (1993) (change of circumstances is "failure of . . . expectation"). Should not the failure of the expectation that parents with shared custody will cooperate in the future likewise be a change in circumstances?

This case, it seems to me, is evidence that my dissent in *Gazo v. Gazo*, 166 Vt. 434, 450-52, 697 A.2d 342, 351-52 (1997), proposing that the present two-pronged test required to modify custody should become an integrated standard, makes sense. Had this Court allowed the circumstances to be considered together with the their effect on the children's best interests, this case would be in an entirely different, and I venture brighter, light.

I would reverse.

### On Motion for Reargument

Plaintiff's motion to reargue, filed April 10, 1998, fails to identify points of law or fact overlooked or misapprehended by this Court. The motion is therefore denied. See V.R.A.P. 40.

**Dooley, J.,** dissenting. The nucleus of plaintiff's motion for reargument is contained in the following statement:

> As precedent, the Supreme Court's holding stands for the proposition that, as a jurisdictional matter, a course of willful, intentional and deliberate parental conduct, warranting the finding of contempt, the imposition of a $4,500.00 monetary sanction and the suspension of all parent-child contact pending completion of a parenting course, in conjunction with the complete cessation of all parent-to-parent communication, does not constitute a real, substantial and unanticipated change of material circumstances.

Appellant goes on to argue that if these facts do not show a change of circumstances to meet the jurisdictional requirement, it is hard "to imagine what does qualify."

Like many arguments of advocates, plaintiff's statement puts the facts in the light that support her desired result. It is, however, a more accurate portrayal of the facts and claims in this case than the majority's statement that she claimed only that "the inability of the 'log' to facilitate communication between the parties caused a substantial change in circumstances." I do not think it is fair to characterize contemptuous misconduct as an example of poor communication.

Our rule indicates that reargument is appropriate when this Court has "overlooked or misapprehended" a point raised by an appellant. V.R.A.P. 40. Neither the original opinion in this case, nor the one-sentence denial of reargument, responds to the main appeal argument plaintiff has made in the context of the facts of the case. At least, plaintiff deserves an explanation why contemptuous misconduct cannot be changed circumstances to meet the applicable jurisdictional requirement. As a result, I conclude that reargument is warranted under our rule and dissent from the refusal to grant it. I am authorized to state that Justice Morse joins in this dissent.