*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-285

JANUARY TERM, 2012

| | |
|---|---|
| Joseph Franz | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| v. | } Family Division |
| | } |
| | } |
| Judith Franz | } DOCKET NO. 815-9-10 Cndm |

Trial Judge: Matthew I. Katz

In the above-entitled cause, the Clerk will enter:

Father appeals from the family court's order in this dispute involving parent-child contact. We affirm.

Mother and father were married in 1998, and they separated in 2006. They are the parents of a son, born in April 1999. By agreement, and pursuant to their final divorce order, mother was awarded sole legal and physical custody of the child with father having "reasonable and liberal rights of visitation." In 2007, a master recommended that mother be found in contempt for treating father as though he were a second-class parent and fostering a similar attitude in the parties' child. At the time, the parties were living in Maryland. Mother subsequently moved to Vermont. In 2008, a Maryland court issued a consent order incorporating a parenting plan made by the parties. The parties agreed that mother would remain the child's sole legal and primary physical custodian and that the child would benefit from spending time with father at least twice each month. The agreement provided that the child would spend the second weekend of each month with father. It also provided that father could arrange for additional liberal and reasonable parenting time as he was able. Additionally, the agreement allowed father to call the child briefly each night to say goodnight between certain specified times. Father subsequently moved to Massachusetts, and he purchased a condominium in Vermont. By agreement of the parties, father saw the child for three overnights on alternate weekends plus alternate Mondays after school.

In June 2010, father relocated to Vermont, moving to a home a mile away from mother. At that time, the parties agreed that father could see the child each week, alternating between Friday to Tuesday and Sunday to Tuesday. Father asked mother if she would continue this schedule during the school year, and mother refused, instead reverting to the visitation allowed in the 2008 consent order of two overnights per month. In September 2010, father filed a motion to modify and to enforce. He asked the court to allow him "reasonable and liberal rights of visitation" as provided by the consent order and to modify the order in recognition that the parties now both lived in Vermont. Mother responded by filing a motion to enforce and to

amend the prior order as to parent-child contact. She asked the court to place restrictions on the parties' interactions at public events and to modify father's visitation so that she could transport the child to religious education classes on Sundays.

Following a hearing, the court issued a March 2011 order modifying parent-child contact. See 15 V.S.A. § 668 ("On motion of either parent . . . and upon a showing of real, substantial and unanticipated change of circumstances, the court may annul, vary or modify an order made under this subchapter if it is in the best interests of the child . . . ."). The court recognized that at the time of the parties' divorce, there was a high degree of animosity between the parents, and substantial ill will and distrust remained. The court noted, for example, that mother had not listed father with the school as an emergency contact, and that she sometimes did not answer the telephone when father called to speak with the child. Nonetheless, the court found that the parties' relationship had become somewhat more businesslike. Father had since remarried to a woman who resided in Williamstown, Massachusetts, and the court found that father was frequently in Williamstown. The court found that the child had a particularly good relationship with father, and that father seemed to have a detailed understanding of the child's school and daily life.

The court concluded that, in the interest of regularizing the child's contacts with father, visitation should occur every other weekend from school dismissal on Fridays to the start of school on Mondays, or Tuesdays if it was a three-day weekend. The court found that father was capable of bringing the child to his religious education classes and that father could pick the child up from school. The court adopted a summer schedule and holiday schedule as well. The summer schedule allowed father to have three weeks with the child one year and four weeks the next. The court also held that father had the right to telephone the child during those weeks when he had an upcoming weekend visit with the child—only on Tuesdays between 8:00 and 8:30 for no longer than five minutes. During the other weeks, father could call on Tuesday and Thursday under the same time limits above. The child was allowed to call either parent at any time. Finally, the court rejected mother's request that father remain 500 feet away from her at public events. It did order, however, that the parent who does not have the child on a particular day stay at least 100 feet away from the other at outdoor events and 50 feet at indoor events, where reasonable, although the parent could approach and converse with the child for not more than five minutes. The court issued a subsequent order in June 2011 addressing father's motion for reconsideration. It modified its earlier order to add that father should have a mid-week "supper visit" every Wednesday from the end of school until 7:30 p.m. This appeal by father followed.

Father argues that the court failed to state explicitly that its decision was in the child's best interests and it failed to consider the statutory best-interest factors set forth in 15 V.S.A. § 665 in reaching its decision. According to father, the court failed to articulate sufficiently how and why it reached its decision. More specifically, he complains that the court did not explain: why three overnight visits every two weeks was in the child's best interests as opposed to the schedule in place the previous summer; why it reduced the child's summer visitation with father; and why it limited father's ability to call the child on the phone. Father also argues that the findings that the court did make do not support its conclusion. Father cites the various statutory factors and argues that the majority of them support his position as to visitation. In making his arguments that his visitation time has been reduced, father refers to the schedule that was in place by informal agreement, not the schedule that was set forth in the court order that the court was asked to modify. Finally, father argues that the court's decision contravenes Vermont's public policy that parent-child contact should be "frequent and continuing." 15 V.S.A. § 650.

2

The trial court has broad discretion in crafting a parent-child contact schedule that serves the best interests of a child, and its decision will not be reversed unless clearly unreasonable on the facts presented or based on unfounded considerations. Gates v. Gates, 168 Vt. 64, 74 (1998). We review findings of fact for clear error, and we will uphold the court's conclusions where supported by the findings. Spaulding v. Butler, 172 Vt. 467, 475 (2001). "As the trier of fact, it [is] the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence." Cabot v. Cabot, 166 Vt. 485, 497 (1997).

We recognize that "[a] major purpose of findings is to enable this Court, on appeal, to determine how the trial court's decision was reached. Therefore, the facts essential to the disposition of the case must be stated." Mayer v. Mayer, 144 Vt. 214, 216-17 (1984) (citations omitted). At the same time, however, we do not require "that the trial court must make a specific finding on each of the statutory factors, nor do we hold that each factor must be specifically addressed by the trial court." Harris v. Harris, 149 Vt. 410, 414 (1988) (quoting Rosenfeld v. Rosenfeld, 249 N.W.2d 168, 171-72 (Minn. 1976)). Instead, "[i]t is sufficient if the findings as a whole reflect that the trial court has taken the statutory factors into consideration, in so far as they are relevant, in reaching its decision." Id. (quoting Rosenfeld, 249 N.W.2d at 171-72).

With these standards in mind, we turn to the court's decision. At the outset, we note that father repeatedly states that the court reduced his visitation time. To the contrary, as discussed below, the court doubled the amount of visitation allowed under in the 2008 order. The parties' informal summer arrangement was not binding on the court or the parties, and it does not provide the threshold standard for determining if contact has been increased or reduced.

In his request for relief, father asked the court to order visitation on alternate weekends from Thursday after school to the following Tuesday, and alternate Mondays from after school to the following Tuesday. In other words, the child would spend six nights out of fourteen with father. Mother proposed that father have parent-child contact every other weekend from Friday from 5:00 p.m. until Sunday at 7:30 p.m. The court did not adopt either side's proposal. Instead, it exercised its discretion and awarded father three overnights every fourteen days plus a bi-weekly supper visit. This was an increase in visitation from the pre-existing court order, not a reduction.

The court similarly did not reduce the amount of summertime visitation, as father suggests. Under the 2008 order, father was entitled to three nonconsecutive weeks of visitation during the summer. Under the new order, he will see the child for three consecutive weeks of visitation during the summer in even-numbered years and four consecutive weeks after the July 4 period during odd-numbered years.

Certainly the court was not obligated to adopt father's proposal, and its refusal to do so does not demonstrate error. The court reasonably concluded that three overnights during each two-week period—more than the amount of bi-weekly visitation in the prior order—maximized and regularized father's contact with the child. While father believes that an every-other-weekend schedule is an outdated approach, it is for the trial court, not this Court, to weigh the evidence and determine what course of action is in the child's best interests. We note that father raised many of these same arguments in his motion to amend, and they were rejected by the trial court.

Although the court's findings are sparse, we conclude that they are sufficient to show that it considered the statutory factors in reaching its decision. The court recognized that father and the child had a good relationship. It found that both parents were intelligent and had good jobs, and presumably both parents are equally capable of meeting the child's material and emotional needs. Mother and father live in the same neighborhood, and thus visitation will not impact the child's present housing, school, and community. The court recognized that there was animosity between the parties, but found that their relationship had become more businesslike. Contrary to father's suggestion, none of the evidence relating to these factors obligates the court to adopt the schedule proposed by father, and none lead to the inexorable conclusion that six overnight visits serve the child's best interests better than three. These kinds of decisions rest solely within the trial court's discretion.

We note that in reaching its conclusion, the court also indicated that it favored simplicity over subtlety and sophistication. In ruling on the motion to amend, it found that father's proposed visitation schedule was very complex and that such complexity suggested that parental interests may be predominating rather than the child's best interest. The court expressed its belief that the schedule should be readily understood by the child, i.e., he should know where he had been and where he was headed. The court was also mindful that whatever schedule it imposed, it was unlikely to remain fixed for more than three years. It is evident that the court considered the evidence and the statutory factors and exercised its reasoned judgment. The court did not need to state expressly that its decision was in the child's best interests—that is implicit in its decision.

As to the phone calls, we note that the court adopted the exact telephone contact proposal offered by father in his motion to amend. In any event, it was certainly reasonable for the court to conclude that a goodnight phone call every night, while appropriate for a child of nine, was no longer warranted for a child of eleven. Indeed, mother testified to this effect.

Finally, we find the court's decision consistent with 15 V.S.A. § 650. The fact that father would like more contact does not show that visitation for three nights every two weeks along with one supper visit deny the child "an opportunity for frequent and continuing contact with both parents." Id. Again, father wrongly suggests that the court "reduced" his contact with the child. As set forth above, the court imposed the contact schedule that it found to be in the child's best interests. Father fails to show that the court abused its wide discretion in doing so.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice

4