Skoglund, J.,
¶ 30. concurring and dissenting. In reversing on a ground that no party has raised, the majority misconstrues the record and misstates the law. The trial court obviously considered and found changed circumstances with respect to both legal and physical rights and responsibilities and it applied the correct standard in doing so. The court acknowledged the case law, relied upon here by the majority, and largely distinguished it because neither parent here had sole physical custody. The key questions before the court were which parent should have the right to determine where the child went to school — authority encompassed within legal rights and responsibilities — as well as which parent had authority to provide routine daily care and control of the child — a right that belongs to the primary physical custodian. Mother proposed, both in her primary and alternate plans, that she have the right to make these decisions. The court clearly determined, based on an evaluation of the child’s best interests, that father should have these rights. The trial court’s *598 findings amply support its conclusions, and we should affirm its decision modifying physical and legal rights and responsibilities. Because the trial court did not consider mother’s alternate proposal in fashioning a parent-child contact schedule, I would remand for findings and conclusions on that issue alone. Accordingly, I concur in part and dissent in part.
¶ 31. As we have repeatedly emphasized, the trial court has broad discretion both in assessing whether there has been a change in circumstances and in evaluating what parenting arrangement is in a child’s best interests. deBeaumont v. Goodrich, 162 Vt. 91, 98, 644 A.2d 843, 847 (1994); see also Gerety v. Gerety, 131 Vt. 396, 402, 306 A.2d 693, 695 (1973) (recognizing that “[tjhere can be no fixed standards to determine what constitutes a substantial change in material circumstances,” and courts must be “guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed”). We apply “a highly deferential standard of review to decisions of the family court regarding parental rights and responsibilities.” Paine v. Buffa, 2014 VT 10, ¶ 10, 195 Vt. 596, 93 A.3d 90. Given its unique position to assess the credibility of witnesses and weigh the evidence, the court’s findings will stand “unless they are clearly erroneous, and we uphold the court’s legal conclusions if they are supported by the findings.” Id. (quotation omitted). ‘We view the findings in the light most favorable to the prevailing party, and only reverse if the court exercised its discretion upon unfounded considerations or to an extent clearly unreasonable upon the facts presented.” Id. (quotation omitted).
¶ 32. The trial court here held two days of hearings and issued a twenty-eight-page opinion, half of which is devoted to findings of fact. The court’s numerous findings include the following. When the parties divorced in August 2008, they agreed to share legal rights and responsibilities for their son. At that time, they could communicate and cooperate in making joint decisions regarding the child’s education and medical care. Over time, however, they became unable to do so, and the increasing level of hostility and disagreement between parents directly affected their child. The most serious disagreement concerned mother’s desire to enroll the child in South Burlington High School for the 2015-2016 school year, with mother claiming that she had the unilateral right to make this decision.
*599 ¶ 33. The court found that mother bore much responsibility for the deterioration of the parties’ ability to share parental responsibilities. She had a tendency to turn small disputes into large ones, and she made inflammatory and incorrect accusations both to father directly and about father to the child’s educators and school administrators. She posted derogatory comments about father on Facebook. Mother threatened father that if he did not agree to one of her proposals for picking up the child that she would call the police and say that father had abandoned child. The court found this last example “disturbing, at least.” The court also found that mother’s refusal at trial to acknowledge the obvious benefit that the child received from his current school cast doubt on the credibility of the rest of her testimony. Additionally, it noted that mother had not displayed good faith in the mediation process over the schooling issue, and she had to be ordered to attend mediation.
¶ 34. Based on the record, the court determined that mother exhibited a strong tendency to assert unilateral control over issues regarding the child, even issues that arose during father’s time with the child. The most significant example of this behavior was the way in which mother went about moving to South Burlington. She simply informed father that she and the child would be relocating, and following the first hearing in this case, she did relocate to South Burlington with the child. Mother emailed father that, despite the ongoing court proceedings, the child’s residence was “not up in the air he is moving to Burlington . . . regardless of the court decision.” She told father that she would “retain at least the custody that I have unless you are able to prove me unfit to the court and they change [sic] 66% to 33% custody of [the child].” The court found that this email reflected mother’s lack of understanding of the nature of the court proceedings. It explained that there was no burden to prove “unfitness” on a motion to modify; rather, the burden was to prove a real, substantial and unanticipated change in circumstances, and if that was proven, then to persuade the court what outcome was in the child’s best interests. The court also made note of mother’s proposal that “even if the Court should order that [the child] remain in the West Rutland School, the only change that the court would be required to make to the existing [parental rights and responsibilities] schedule would be to provide the relief requested in [mother]’s response to the instant motion in this matter — that *600 is, to memorialize in an Order the actual existing arrangement from 2013, described herein.” The court explained that mother’s proposal did not appear to contemplate that once a change in circumstances was established, the court had the authority and the responsibility to “annul, vary, or modify an order ... if it is in the best interests of the child, whether or not the order is based upon a stipulation or agreement.” 15 V.S.A. § 668.
¶ 35. Based on its findings, the court found at least two grounds to show that there had been a “real, substantial and unanticipated change of circumstances” since the August 2008 final divorce order. Id. First, the parties could no longer communicate, cooperate and make joint decisions regarding their child. Second, mother had relocated to South Burlington and decided to change the child’s school. The court detailed the communication breakdown that had occurred, and also explained that mother’s move to a new location sixty miles away impacted the daily question of where the child would attend school and which parent would be with him on a daily basis.
¶ 36. Having reached these conclusions, the court further observed that this case did not appear to fall within the classic type of “relocation” cases addressed by this Court. Because parents were joint custodians, moreover, father did not squarely bear the burden of “justifying the violent dislocation of a change in custody from one parent to the other.” Hawkes v. Spence, 2005 VT 57, ¶ 11, 178 Vt. 161, 878 A.2d 273 (cautioning that “‘when a noncustodial parent seeks a change in custody based solely on the custodial parent’s decision to relocate, the moving party faces a high hurdle in justifying the violent dislocation of a change in custody from one parent to the other’ ” (quoting Hoover v. Hoover, 171 Vt. 256, 259, 764 A.2d 1192, 1194 (2000)). Additionally, the court found that mother sought to move for the specific reason of changing the child’s school, rather than to better her own life. She wanted the unfettered right to do so despite the parties’ shared parenting arrangement. Father was forced to file his motion to modify because mother disregarded the need to mediate this issue and failed to ask the court’s permission to change the existing order.
¶ 37. Even if the classic relocation analysis did apply, the court continued, it would find the requisite change in circumstances because mother’s relocation clearly impaired father’s ability to exercise the responsibilities that he had been exercising under the *601 current plan. Changing that arrangement, the court explained, would substantially diminish the significant parenting responsibility that father has had for the child for the prior seven years. The court reiterated that father did not have the “heavy burden” of overcoming the impact of a “violent dislocation” cautioned against by this Court, and it concluded that any “dislocation” would result from mother removing the child from the only community he had known, and away from father’s home where he had lived since he was two years old. Thus, the court determined “that under any possible legal analysis, father met his burden of providing a real, substantial and unanticipated change in circumstances.”
¶ 38. In the face of this analysis, the majority somehow concludes that the court failed to adequately address the burden required of a party seeking to change an arrangement of physical rights. Ante, ¶ 21. The majority cites cases that involve, as the trial court recognized, situations where a court was shifting sole physical custody from one parent to the other. See Hawkes, 2005 VT 57, ¶ 5 (pursuant to final divorce order, mother had sole physical rights and responsibilities, and parties shared legal rights and responsibilities); deBeaumont, 162 Vt. at 94, 644 A.2d at 845 (mother appealed modification order that shifted parental rights and responsibilities from her to children’s father); Pill v. Pill, 154 Vt. 455, 455, 578 A.2d 642, 643 (1990) (mother appealed modification order that transferred primary physical rights from her to children’s father); Kilduff v. Willey, 150 Vt. 552, 554, 554 A.2d 677, 678 (1988) (recognizing that, under existing order, mother had sole physical custody of child, while father had liberal visitation rights). The language concerning a “heavy burden,” and a “violent dislocation” presumes that this factor is present, based in part on the fact that “the physical custodian has a right to determine the children’s residence,” and there are various policy reasons why a parent with sole physical custody should be allowed to relocate. Hawkes, 2005 VT 57, ¶ 9. We made this clear in Hawkes, holding that “‘when a noncustodial parent seeks a change in custody based solely on the custodial parent’s decision to relocate, the moving party faces a high hurdle in justifying the violent dislocation of a change in custody from one parent to the other.’ ” Id. ¶ 11 (quoting Hoover, 171 Vt. at 259, 764 A.2d at 1194).[3] As the *602 trial court observed, this language is inapplicable because neither parent was the sole physical custodian; parents here had joint custody. Yet the trial court even went on to assume arguendo that this language did apply, and concluded that father had met its burden. The majority is wrong in asserting that this issue was not adequately addressed.
¶ 39. Compounding its error, the majority inexplicably fails to discuss the law that applies to modification of shared parenting arrangements. Where, as here, a shared parenting arrangement becomes unfeasible due to the parents’ inability to cooperate in decision making or other circumstances, we require “at the very least a reassessment of the custodial arrangement and, because of the practicalities involved in shared parenting,” these circumstances “will often necessitate a change in custody.” Hoover, 171 Vt. at 259, 764 A.2d at 1194. “This result is further compelled when the parties are no longer able to engage in shared decision-making because of a deterioration in their parenting relationship.” Id. We repeated this standard in Hawkes, 2005 VT 57, ¶¶ 11-12 (citing Hoover and drawing clear distinction between cases involving shared parental rights and those where one parent has sole physical custody); see also Maurer v. Maurer, 2005 VT 26, ¶ 8, 178 Vt. 489, 872 A.2d 326 (mem.) (affirming trial court’s finding of real, substantial and unanticipated change of circumstances in context of shared parenting arrangement where parents were unable to agree on transportation or counseling, were setting up activities for child without consulting one another, and had different parenting styles).
¶ 40. Indeed, Vermont law requires that “[w]hen the parents cannot agree to divide or share parental rights and responsibilities, the Court shall award parental rights and responsibilities primarily or solely to one parent.” 15 V.S.A. § 665(a) (emphasis added); see also Chase v. Bowen, 2008 VT 12, ¶ 39, 183 Vt. 187, 945 A.2d 901 (explaining that statute’s purpose is to avoid disruption to children “caused by forcing unwilling parents to engage in joint decision-making,” and recognizing that “by forcing unwilling parents to share parental rights and make joint decisions, a court risks placing a child in the middle of constant and harmful disputes” (quotation omitted)).
*603 ¶ 41. Parents here could not agree where the child would live and go to school. Both sought sole physical and legal rights and responsibilities so that they could make these decisions. Mother had relocated to South Burlington and wanted the child to live with her there and attend school in that city; father wanted the child to live with him in West Rutland and attend school in that town. Beyond this fundamental disagreement, the parents could no longer engage in joint decision-making on other topics, to the detriment of their child. Based on its findings, the court did not err in concluding, by a preponderance of the evidence, that there had been a “real, substantial and unanticipated change of circumstances” since the August 2008 final divorce order. Its decision is consistent with our case law and it reflects the trial court’s assessment of the weight of the evidence and the credibility of witnesses. See Hawkes, 2005 VT 57, ¶ 10 (explaining that “whether a relocation or other change is substantial enough to meet the threshold must be determined in the context of all the surrounding circumstances, keeping in mind that the effect on the child is what makes a change substantial”); Gates v. Gates, 168 Vt. 64, 70, 716 A.2d 794, 798 (1998) (“[WJhile the court is not permitted to decide what is in the best interests of the children during the first phase of the hearing, it may still consider the impact of the change upon the children in deciding whether the circumstances have substantially changed.”).[4]
¶ 42. In Hoover, as here, “mother and father were unable to resolve their conflict and reach an agreeable arrangement that would enable them to continue co-parenting,” and thus, “a disruption of the custodial arrangement in this case was inevitable. The trial court was merely in the position of deciding what was in the best interests of the child[ ]: sole custody with mother or sole custody with father.” 171 Vt. at 259-60, 764 A.2d at 1194. The court here determined that father should have sole physical and legal rights and responsibilities, and its findings support this conclusion. Mother disagrees with the result, but challenges only the court’s assessment of the weight of the evidence. Her arguments are easily disposed of on appeal. See, e.g., Payrits v. *604 Payrits, 171 Vt. 50, 54, 757 A.2d 469, 472-78 (2000) (“We have consistently held that ... the credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact, and its determination must stand if supported by credible evidence.”); Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571, 980 A.2d 799 (mem.) (explaining that arguments which amount to nothing more than a disagreement with court’s reasoning and conclusion do not make out a case for an abuse of discretion).
¶ 48. The majority, however, only sees the problem as a question of which school the child should attend and decides that this case is “about the education of the parents’ child, an aspect of legal responsibilities.” Ante, ¶ 15. Although it accepts that a change in circumstances exists that requires the abandonment of shared custody, it disregards all the findings about mother’s behavior that contributed to the demise of cooperation and sends the matter back to the trial court to assess whether there were changed circumstances that would support a modification of the parental responsibility provisions concerning physical responsibilities. For support, the majority relies on cases that involved modification of sole custody orders: Hawkes, Kilduff and a decision that is of little relevance to this case, Gates, 168 Vt. at 68, 716 A.2d at 797. The majority fails to recognize the litany of findings reflecting an overall breakdown in these parents’ ability to cooperate with respect to the routine daily care and control of their child, above and beyond their disagreement concerning the child’s schooling. On the basis of these findings, which are supported by the evidence, the court found that the parties’ ability to communicate, cooperate and make joint decisions has, “for all intents and purposes, evaporated,” and that “the increasing level of disagreement has directly impacted the child.” Moreover, the breakdown in the parties’ ability to effectively cooperate described by the trial court extended to the matters central to physical rights and responsibilities — the routine daily care and control of the child. Given these findings, the trial court’s decision to modify physical, as well as legal rights and responsibilities, was within its discretion.
¶ 44. Although I would affirm the trial court’s decision to modify legal and physical rights and responsibilities, and to assign them solely to father, I agree with the majority that on this record we cannot affirm the trial court’s parent-child contact schedule. *605 Before the events that triggered this change from shared custody, this child was spending 64% of his time with his mother. The trial court’s modified order allocated roughly 20% of the child’s time to mother — three (and occasionally) four weekend visits per month, and no mid-week visits. This is a dramatic change for a child the court found to have a particular need for “consistency and continuity.” To the extent this schedule is a natural consequence of mother’s relocation to South Burlington, and a desire to protect the child from disruptive mid-week commutes, it may serve the child’s best interests. However, mother presented the trial court with a “Plan B,” indicating that if the court ordered a custodial arrangement in which the child remained in the West Rutland school district, she would continue to use the Proctor home owned by her significant other for the purpose of continuing the existing parent-child contact arrangement. The trial court’s parent-child contact (PCC) order does not address this possibility, or explain why, in the face of mother’s stated willingness to return to the West Rutland area to facilitate ongoing contact with the child, such a dramatic curtailment of mother’s PCC time was in the child’s best interests. Because the trial court did not address this consideration in determining the PCC schedule, I would remand for reconsideration of the schedule in light of this factor. I join the majority’s decision to that extent.
¶ 45. In reversing the court’s decision as to physical rights and responsibilities, however, the majority ignores our standard of review and ignores the clear rationale advanced by the trial court in support of its decision. Where, as here, “the family court’s award of custody reflects its reasoned judgment in light of the record evidence, its decision may not be disturbed.” Kasper v. Kasper, 2007 VT 2, ¶ 5, 181 Vt. 562, 917 A.2d 463 (mem.). Based wholly on an argument of its own making, the majority holds the trial court to an erroneous legal standard, and finds reversible error where no error exists at all. Although I concur with the majority’s affirmance of the trial court’s order with respect to legal rights and responsibilities, as well as its remand with respect to PCC, I dissent from its conclusion as to the modification and allocation of physical rights and responsibilities.
¶ 46. I am authorized to state that Justice Robinson joins in this concurrence and dissent.

 It is not clear from Hawkes if this language refers to an assessment of a child’s best interests, or an assessment of changed circumstances, although it appears to *602 be the former. In any event, this Court has acknowledged that “the difference between the separate analyses under the modification statute’s two distinct steps is ‘subtle.’ ” Hawkes, 2015 VT 57, ¶ 10 (citation omitted).

 The majority appears to ignore this case law, finding fault with the trial court for considering the impact that transferring schools would have on the child. Ante, ¶ 19. The court was required to consider what effect a move to South Burlington would have on the child both in assessing changed circumstances and in evaluating what allocation of parental rights and responsibilities was in his best interests.