2005 VT 57

## Sandra L. Hawkes v. Scott J. Spence
## Charlann Lacaillade v. Demian J. Hardaker

[878 A.2d 273]

Nos. 03-304 and 04-233

Present: Amestoy, C.J.,[1] Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.),[2] Specially Assigned

Opinion Filed May 6, 2005

---

[1] Former Chief Justice Amestoy was not present at oral argument and did not participate in deciding *Lacaillade v. Hardaker*, 04-233. Chief Justice Amestoy sat for oral argument but did not participate in deciding *Hawkes v. Spence*, 03-304.

[2] Retired Chief Justice Allen was not present at oral argument and did not participate in deciding *Hawkes v. Spence*, 03-304.

*Catherine E. Clark* and *Laurie A. LeClair* (On the Brief) of *Clark, Long, Werner & Flynn, P.C.*, Burlington, for Plaintiff-Appellee (03-304).

*Charlann Lacaillade*, Pro Se, Barre, Plaintiff-Appellee (04-233).

*Matthew J. Buckley*, Richmond, for Defendant-Appellant (03-304).

*Demian J. Hardaker*, Pro Se, Barre, Defendant-Appellant (04-233).

¶ 1. **Reiber, J.** In each of these two separate cases,[3] the family court determined that a divorced parent seeking to prevent the other parent from moving out of state with the parties' children failed to meet the threshold requirement for modifying parental rights and responsibilities by showing a real, substantial and unanticipated change of circumstances. The family court's decisions in these cases highlight the need for us to clarify an area of the law governing seemingly irreconcilable conflicts in which the custodial parent's interest in building a new life with the children is often pitted against the noncustodial parent's interest in maintaining a close relationship with the children. We conclude that the standard and factors set forth in § 2.17(1) and comment b of the American Law Institute's (ALI) Principles of the Law of Family Dissolution for determining when changed circumstances exist are generally consistent with our law and will provide valuable guidance to the family court in making that threshold determination. In both cases before us, the family court erred by holding that relocation alone can never support a finding of changed circumstances. In *Hawkes*, we reverse the family court's decision and remand the matter for the court to consider the best interests of the child in light of the parties' motions to modify. In *Lacaillade*, we

---

[3] The cases concern two distinct appeals from different family courts. The appeals were briefed separately and argued during different terms of the Court. Because both appeals raise similar issues, we have consolidated them in one opinion solely to help clarify the law to be generally applied in relocation cases.

reverse the family court's decision and remand the matter for the court to reconsider whether changed circumstances exist and, if so, to examine the best interests of the children in light of the parties' motions to modify. We emphasize, however, that when one parent has parental rights and responsibilities for a significant majority of the time, the other parent challenging relocation bears a heavy burden of demonstrating that the severe measure of transferring primary rights and responsibilities from one parent to another is necessary to serve the children's best interests.

## I. *The Facts*

### A. *Hawkes v. Spence*

¶ 2. The parties divorced in 1999, when their daughter was two and one-half years old. At the time of the divorce, mother lived in Colchester, Vermont, and father lived a relatively short distance away in Richmond, Vermont. The final divorce order, which was based on the parties' stipulation, provided that mother would have sole legal parental rights and responsibilities, and that the parties would share physical rights and responsibilities on a fifty-fifty basis until their daughter started kindergarten in 2002, at which time the child would stay with mother for ten days and with father the other four days during each two-week period.[4]

¶ 3. The parties abided by the parental responsibility arrangement established in the final order until, in March 2003, mother notified father in writing that she and her fiancé intended to move to Maryland in June with the parties' daughter so that mother's fiancé could be near his family and work with his father in the family business there. Mother had lost her teaching job because of budget cuts and was looking for a teaching position in Maryland. Recognizing that the move would require a change in the parent-child contact schedule established in the final divorce order, mother filed a motion to modify parent-child contact. Father opposed mother's motion and filed his own motion seeking primary legal and physical rights and responsibilities so that he could keep the parties' daughter with him in Ver-

---

[4] The family court's final modification order states, and the parties do not disagree, that the final divorce order gave father physical parental rights and responsibilities thirty-five percent of the time beginning in the fall of 2002. By our calculation, the final order gave father parental rights and responsibilities only twenty-nine percent of the time starting in 2002 (four of every fourteen days). The seven percent difference is not critical to our analysis contained herein.

mont. Following a hearing, the family court granted mother's motion and denied father's motion based on its conclusions that (1) no change of circumstances other than relocation existed, and (2) relocation alone by a parent who holds sole legal parental rights cannot be the basis for modifying parental rights. Accordingly, the court did not consider the best interests of the child. See 15 V.S.A. § 668 (allowing court to modify previous divorce order upon showing of real, substantial and unanticipated change of circumstances, if it is in child's best interests).

¶ 4. On appeal, father argues that the family court erred by determining that (1) mother's proposed relocation was not a real, substantial and unanticipated change of circumstances; (2) mother had a right to move out of state with the parties' child because she had sole legal parental rights and responsibilities; and (3) changed circumstances existed with respect to mother's motion but not father's motion.

## B. *Lacaillade v. Hardaker*

¶ 5. The parties married in December 1993 and divorced in February 2001. Their children were born in September 1990 and April 1996, respectively. Pursuant to the parties' stipulation, the final divorce order provided that mother would have sole physical rights and responsibilities, but that the parties would share legal rights and responsibilities. The parent-child contact schedule contained in the stipulated order provided that father would have the children from Thursday afternoon to Tuesday morning every other week — approximately five days every two weeks.

¶ 6. The parties followed the parental responsibility arrangement contained in the final divorce order until January 2004 when mother filed a motion to modify parent-child contact. She sought sole legal rights and responsibilities and a change in the parent-child contact schedule because her new husband had accepted a position with the Department of Homeland Security as a border patrol officer, which would require the family to move to Calexico, California, on the Mexican border. Mother anticipated that the parties' children would make the move after completing the 2003-2004 school year. Father opposed mother's motion and filed his own motion seeking sole legal and physical parental rights and responsibilities. Following a hearing, the family court granted mother's motion, except for continuing shared legal parental rights and responsibilities, and denied father's motion based on its conclusion that relocation alone cannot meet the threshold requirement of showing a real, substantial and unanticipated change of

circumstances. Accordingly, the court declined to reach a best-interests analysis.

¶ 7. On appeal, father argues that the trial court erred in determining that (1) mother's intended relocation did not meet the threshold requirement of showing a real, substantial and unanticipated change of circumstances; (2) the final divorce order gave mother sole physical rights and responsibilities, thereby allowing her to unilaterally move out of state with the parties' children; and (3) changed circumstances existed with respect to mother's motion but not father's motion.

## II. *The Law*

¶ 8. As noted, two legitimate interests — the custodial parent's interest in making unfettered decisions for the benefit of the new nuclear family and the noncustodial parent's interest in maintaining a close bond with the parties' children — often clash in relocation cases, thereby causing seemingly irreconcilable conflicts. Appellate courts have struggled mightily to create a legal framework in which to resolve such conflicts while keeping in mind the paramount interests of the children. See generally *Hollandsworth v. Knyzewski*, 109 S.W.3d 653, 657-62 (Ark. 2003) (reviewing prominent decisions in other jurisdictions that have grappled with relocation issues); *In re Marriage of Lamusga*, 88 P.3d 81, 90-99 (Cal. 2004) (reviewing California courts' struggles with relocation cases). The difficulty is establishing standards that are flexible enough to allow trial courts to weigh the complex variables that come into play in relocation cases, and yet not so flexible that they fail to provide guidance to the trial courts and predictability to the litigants and lawyers involved. Compare *Tropea v. Tropea*, 665 N.E.2d 145, 151 (N.Y. 1996) (explaining that children's interests are not served by viewing relocation cases through "prisms of presumptions and threshold tests that artificially skew the analysis in favor of one outcome or another"; rather, "courts should be free to consider and give appropriate weight to all of the factors that may be relevant to" determination of whether proposed relocation would serve best interests of children), with *Ireland v. Ireland*, 717 A.2d 676, 683 (Conn. 1998) (requiring custodial parent to demonstrate that relocation is for legitimate purpose and is reasonable in light of that purpose; if custodial parent is able to make out prima facie case in support of relocation, burden shifts to noncustodial parent to prove that relocation would not be in children's best interests). See generally C. Ford, *Untying the Relocation Knot: Recent Developments and a Model for Change*, 7 Colum. J. Gender & L. 1 (1997); C. Bruch, *The Relocation of*

*Children and Custodial Parents: Public Policy, Past and Present*, 30 Fam. L.Q. 245 (1996).

[1] ¶ 9. In Vermont, several general principles have emerged from our previous relocation cases that address the statutory test requiring a threshold showing of real, substantial and unanticipated changed circumstances before parental rights and responsibilities can be modified based on the children's best interests. See 15 V.S.A. § 668. One principle is that because the physical custodian has a right to determine the children's residence, and because allowing the new family unit to flourish necessarily benefits the children of that family, *Lane v. Schenck*, 158 Vt. 489, 498, 614 A.2d 786, 791 (1992), "relocation without more is not per se a substantial change of circumstances." *deBeaumont v. Goodrich*, 162 Vt. 91, 97, 644 A.2d 843, 847 (1994); see *Habecker v. Giard*, 2003 VT 18, ¶ 6, 175 Vt. 489, 820 A.2d 215 (mem.) ("[R]elocation alone does not automatically constitute a change of circumstances."). Our holding that relocation alone is not per se changed circumstances, however, does not equate to holding that relocation alone may never amount to changed circumstances. In other words, although a custodial parent's relocation, by itself, does not automatically satisfy the threshold showing of changed circumstances, neither does relocation alone automatically preclude the family court from finding changed circumstances just because the relocating party is the custodial parent.

¶ 10. Rather, whether a relocation or other change is substantial enough to meet the threshold must be determined in the context of all the surrounding circumstances, keeping in mind that the effect on the child is what makes a change substantial. *deBeaumont*, 162 Vt. at 97-98, 644 A.2d at 847. Without question, assessing changed circumstances based on how the children will be affected obscures the line separating the two-part inquiry set forth in § 668. Indeed, as we have stated, the difference between the separate analyses under the modification statute's two distinct steps is "subtle." *Gates v. Gates*, 168 Vt. 64, 69-70, 716 A.2d 794, 798 (1998) ("[W]hile the court is not permitted to decide what is in the best interests of the children during the first phase of the hearing, it may still consider the impact of the change upon the children in deciding whether the circumstances have substantially changed.").

¶ 11. In situations when the custodial parent's move amounts to changed circumstances, the family court, in considering the children's best interests, must give deference to the custodial parent's choice of

residency and may not substitute its judgment "for that of the custodial parent merely because the court would have done something different if it had been the parent." *Lane*, 158 Vt. at 495, 614 A.2d at 789. Thus, "when a noncustodial parent seeks a change in custody based solely on the *custodial* parent's decision to relocate, the moving party faces a high hurdle in justifying the violent dislocation of a change in custody from one parent to the other." *Hoover v. Hoover*, 171 Vt. 256, 259, 764 A.2d 1192, 1194 (2000) (internal quotations omitted).

¶ 12. On the other hand, "when childrearing and its concomitant decision-making are shared, relocation to a remote location by one parent requires at the very least a reassessment of the custodial arrangement and, because of the practicalities involved in shared parenting, will often necessitate a change in custody." *Id.* Thus, a critical factor in relocation cases is the amount of rights and responsibilities exercised by each parent. In considering that factor, we instructed the family court not to necessarily rely on the custodial assignments in the final divorce order, but rather to consider the parties' actual parenting arrangement. See *deBeaumont*, 162 Vt. at 96, 644 A.2d at 846 (although final divorce order awarded mother physical responsibility, "time allocation for each parent was nearly equal so that a co-parenting arrangement was present").[5]

¶ 13. Apparently, these principles need some clarification, considering that both family court judges in the cases before us construed our precedents as holding that relocation alone can never satisfy the

---

[5] We acknowledge that our decisions here and in *Hoover v. Hoover*, 171 Vt. 256, 764 A.2d 1192 (2000), may appear, at first glance, to be inconsistent with our decision in *Dunning v. Meaney*, 161 Vt. 287, 640 A.2d 3 (1993). As noted above, in *Hoover*, 171 Vt. at 259, 764 A.2d at 1194, we stated that when parents share custody, relocation to a remote location "requires at the very least a reassessment of the custodial arrangement." Moreover, we emphasize today that, in considering the amount of parental rights and responsibilities exercised by each parent, we examine the parties' actual custodial arrangement rather than the one set forth in the final divorce order. In contrast, in *Dunning*, 161 Vt. at 290, 640 A.2d at 5, we affirmed the family court's conclusion that mother's relocation to Albany, New York was not changed circumstances, even though the parties' shared legal rights and responsibilities and the mother — the custodial parent — had acquiesced to an arrangement that gave each party equal time with the parties' child. The principal basis for affirming the family court in *Dunning*, however, was that the parties had clearly anticipated mother's move and had even provided for a possible change in the visitation schedule in the event the move occurred. *Id.* Thus, *Dunning* is not inconsistent with our decision today.

threshold requirement of showing changed circumstances. In an effort to clarify our law, while providing guidance to judges and predictability to litigants without artificially restricting the judges' ability to decide cases, we adopt § 2.17(1) of the ALI Principles of the Law of Family Dissolution. Under that section, relocation is a substantial change of circumstances justifying a reexamination of parental rights and responsibilities "only when the relocation significantly impairs either parent's ability to exercise responsibilities the parent has been exercising or attempting to exercise under the parenting plan." [6] ALI Principles of the Law of Family Dissolution § 2.17(1) (2002) [hereinafter ALI Principles]. Comment b to § 2.17 acknowledges that because the relevant factors are too numerous and varied, there is no precise formula for determining when a parent's ability to exercise his or her responsibilities has been substantially impaired. Rather, the trial court must consider, among other relevant factors, "[t]he amount of custodial responsibility each parent has been exercising and for how long, the distance of the move and its duration, and the availability of alternative visitation arrangements." *Id.* § 2.17 cmt. b. Moreover, in determining whether impairment is substantial, the court should consider "the amount of custodial responsibility that a parent has been actually exercising," rather than the amount allocated but not necessarily exercised under a court order. *Id.*

### III. *Applying the Law*

#### A. *Hawkes v. Spence*

¶ 14. In this case, the parties argue extensively about whether mother is the custodial parent or merely a co-parent sharing parental rights and responsibilities with father. Given our prior relocation case law, the parents view the answer to this question as the critical fact in determining whether the family court must defer to mother's decision to relocate to Maryland with her fiancé. See *Hoover,* 171 Vt. at 259-60, 764 A.2d at 1194 (distinguishing custodial and shared custody relationships). The parties' dispute is more about semantics than facts, however. Irrespective of what word was used in the final divorce order to describe the parties' stipulated custodial arrangement, the undisputed facts are that (1) mother has had legal parental rights and responsibilities since December 1999 when the final divorce order was

---

[6] At this time, we are adopting only this particular subsection of the ALI Principles on the Law of Family Dissolution.

issued; (2) from December 1999 until their daughter entered kindergarten in the fall of 2002, the child spent equal time with each parent pursuant to the final order; and (3) from the fall of 2002 until these proceedings, the child spent approximately two-thirds of her time with mother pursuant to the final order.

¶ 15. The family court concluded that father failed to satisfy the threshold showing of changed circumstances because (1) a custodial parent's relocation, by itself, cannot be the basis for modifying parental rights; and (2) as legal custodian, mother had the right to determine unilaterally the residency of the parties' daughter. The trial court was mistaken on both counts. As noted above, although relocation alone is not per se changed circumstances, we have never held that relocation alone may never be changed circumstances. We clarify today that relocation by a custodial parent, in and of itself, may amount to changed circumstances as expressed in § 2.17(1) and comment b of the ALI Principles adopted herein. Further, while the allocation of legal rights and responsibilities could certainly be a factor in determining whether there are changed circumstances, we have held that "the physical custodian has a right to determine the child's residence." *deBeaumont*, 162 Vt. at 97, 644 A.2d at 847. Thus, the family court in *Hawkes* erred in concluding that it was foreclosed from finding changed circumstances because the relocating parent was the child's sole *legal* custodian.

¶ 16. The issue, then, is whether mother's proposed relocation is a real, substantial and unanticipated change of circumstances. The relevant question under our prior law and the ALI standard we adopt today is whether mother's relocation would significantly impair father's ability to continue exercising the rights and responsibilities he has been exercising.[7] As noted, among the relevant factors that should be considered in addressing this question are (1) the amount of custodial responsibility that the parties have been exercising, and for how long, (2) the distance and duration of the move, and (3) the availability of alternative visitation arrangements. ALI Principles § 2.17(1) cmt. b. Therefore, to determine whether a move would significantly

---

[7] Neither party in this case has suggested that mother's proposed relocation was anticipated at the time of the divorce, cf. *Dunning*, 161 Vt. at 290, 640 A.2d at 5 (finding no changed circumstances because relocation was anticipated by parties at time of divorce) or was an attempt by mother to undermine father's relationship with the parties' daughter. The same is true in *Lacaillade*.

interfere with the relationship between the child and the nonmoving parent, the court must consider the nature and extent of that relationship, and how the move would affect it. For instance, if the noncustodial parent had minimal parent-child contact — like every other weekend — arranging acceptable alternative visitation would be more feasible, depending perhaps on the distance of the move.

¶ 17. We now apply the ALI criteria to the facts of this case, starting with the amount and time period of custodial responsibility exercised by each parent. At the time mother filed her motion to modify parental rights and responsibilities, father had been exercising physical rights and responsibilities for about one-third of the child's time during the previous seven months. Before that, however, since at least the issuance of the final divorce order in December 1999, father and mother had shared their daughter's time equally between them. Apparently, father's contact with the parties' daughter was reduced from one-half to one-third of the child's time after the child started school because the child would be staying with her mother most of the time that she was in school. Hence, although we recognize that mother was the custodial parent while the child was attending school, the parties' arrangement demonstrated their continued desire for each of them to spend an approximately equal amount of time with their child. The family court also found that father had made full use of his parent-child contact and had been a very active participant in the child's life, noting that father had been a loving and devoted father to the child.

¶ 18. As for the distance and duration of the move, mother intended to relocate out of state hundreds of miles from Vermont, and there is no indication that the move was temporary in nature. With respect to the availability of alternative visitation arrangements, we note that the family court fashioned a parent-child contact schedule for father that reduced by approximately one-third his time with his daughter. While the court's revised parent-child contact schedule is not itself a factor in determining whether changed circumstances exist, it demonstrates that mother's move required a changed parent-child contact schedule that substantially reduced father's time with his daughter, thereby having the potential to significantly interfere with their relationship.

¶ 19. In sum, each of the ALI factors strongly indicates that mother's relocation amounted to a substantial change of circumstances at the time of the modification hearing. See ALI Principles § 2.17(1) cmt. b ("[A] relocation several hundred miles away will ordinarily constitute changed circumstances, unless the prior pattern of visitation has been so infrequent that the additional burden imposed on a parent

by the longer distance is not significant."). This is particularly true because, apart from the few months immediately preceding the modification hearing, the parties had shared physical parental rights and responsibilities on an equal basis from the time of their divorce in 1999 until their daughter started school in the fall of 2002. We recognize that the parties did not have the benefit of submitting, and the family court considering, evidence aimed directly at addressing the ALI standard and factors we adopt today, but the circumstances of this case at the time of the modification hearing plainly demonstrated changed circumstances under that standard, which is generally consistent with our prior law. Thus, we see little point in delaying matters further by having the family court hold another change-of-circumstances hearing before addressing the best-interests prong of 15 V.S.A. § 668 under the parties' current circumstances. In doing so, we do not intend to imply that the threshold requirement of changed circumstances contained in § 668 is superfluous after today's decisions. To the contrary, we reiterate that custodial parents may change residency without the family court reexamining the division of parental rights and responsibilities when the relocation does not significantly impair substantial rights and responsibilities being exercised by the noncustodial parent.

¶ 20. Father raises another issue that is also present in the second appeal consolidated herein. He sees inconsistency in the family court finding no changed circumstances with respect to his motion to modify custody, but apparently finding changed circumstances with respect to mother's motion to modify parent-child contact. Although our reversal of the family court's decision effectively moots this issue, we emphasize that the family court may find no changed circumstances with respect to a proposed relocation that nonetheless requires the court to modify the parties' parent-child-contact schedule. A relocation will frequently require modifying parent-child contact, regardless of whether the relocation amounts to a change of circumstances for custody purposes. The burden of showing changed circumstances with respect to a motion to alter parent-child contact is "not as high" as the heavy burden of showing changed circumstances with respect to a motion seeking a change of custody. See *Gates*, 168 Vt. at 68, 716 A.2d at 797 (recognizing that modification of a decision-making arrangement has lower threshold requirement for showing changed circumstances than change of custody).

## B. *Lacaillade v. Hardaker*

¶ 21. In many ways, the facts and issues in this case are similar to the facts and issues in *Hawkes*. As in *Hawkes*, the family court in this case erroneously concluded that relocation alone can never be a change of circumstances. As in *Hawkes*, notwithstanding father's statement that mother always wanted to get away from the weather in Vermont, there is no real contention that mother's proposed relocation was anticipated or prompted by mother's desire to undermine father's relationship with the children. And, as in *Hawkes*, the salient question is whether, considering the relevant criteria, the proposed relocation would significantly impair father's relationship with the parties' children. Regarding the amount of father's parent-child contact, it is undisputed that from the February 2001 final divorce order until commencement of the modification proceedings, father enjoyed parent-child contact for approximately thirty-five percent of the children's time — five of every fourteen days. The family court found that both parents are devoted to their children and take full advantage of their time with the children as set forth in the stipulated final divorce order. In short, mother is the children's primary physical custodian, and father has substantial parent-child contact. Further, pursuant to the final divorce order, the parties share legal parental rights and responsibilities.

¶ 22. Regarding the other ALI factors, the distance of the proposed relocation in this case is very substantial, essentially from the northeast to the southwest corner of this country. Further, the evidence does not demonstrate that the move is for a limited period of time. As for the availability of alternative visitation arrangements, the distance of the move may make it difficult for the family court to fashion a visitation schedule that does not reduce, or alter the nature of, father's substantial parent-child contact, particularly considering that father shares legal parental rights and responsibilities with mother.

¶ 23. Plainly, the facts of this case could support a finding of changed circumstances under the ALI standard, assuming that the relocation occurred as planned. Nevertheless, applying that standard and the relevant criteria does not so unequivocally demonstrate changed circumstances that we will preclude the family court from revisiting the issue. This is particularly true in this case because the record suggests that the current circumstances could be markedly different from what was expected at the time of the final modification order. Therefore, we remand the matter for the court to reconsider

whether the changed-circumstances threshold has been met, and, if so, to examine the best interests of the children with respect to father's motion to transfer parental rights and responsibilities to him. We emphasize that, if the court finds changed circumstances, father retains the heavy burden of demonstrating that the children's best interests require transferring primary parental rights and responsibilities from one parent to another.

*The family court's decision in Hawkes v. Spence is reversed, and the matter is remanded for the court to consider the best interests of the child under the parties' current circumstances.*

*The family court's decision in Lacaillade v. Hardaker is reversed, and the matter is remanded for the court to reconsider whether there are changed circumstances and, if so, to consider the best interests of the children under the parties' current circumstances.*