*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-283

DECEMBER TERM, 2013

| | | |
|---|---|---|
| Kimberly Tillotson | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Washington Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| John Kidder | } | DOCKET NO. 94-3-12 Wndm |

Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Father appeals the superior court's denial of his motion to modify parental rights and responsibilities (PR&R) with respect to the parties' three children. We affirm.

The children of this nine-year marriage were born in June 2004, November 2005, and May 2008, respectively. The parties were divorced in November 2010, at which time father resided in the marital home in Chelsea and mother resided with her mother in Williamstown, where the older children attended school. The final divorce order awarded mother physical, and father legal, PR&R, and approved a parent-child contact schedule that gave father a little less than half of the children's time. When school was in session, mother had the children during the week except for a one-day mid-week transition, and father had the children on the weekends.

In December 2011, father moved to Barre. In February 2012, mother moved to Starksboro for work and to live with her boyfriend, triggering father's motion to modify PR&R. In April 2012, mother filed a motion to modify legal PR&R and parent-child contact. Following an August 6, 2012 hearing, the superior court issued an entry order deferring a decision on the motions to modify until the judge who had presided at the parties' divorce hearing rotated in to that court and could hear the motions. Until then, the court ruled that the children would attend school where mother resided. Father filed a motion to reconsider, asking the court to allow him to have the children attend school in the Barre Town school district pending a decision on the parties' motions to modify, which were scheduled to be heard on September 14, 2012. At an August 27, 2012 hearing, the court granted father's motion to reconsider based on the fact that he had been awarded legal PR&R under the final divorce order. Father then enrolled the children in the Barre Town school system.

Mother filed several motions to reconsider, to enforce, and for contempt. The parties were notified that these motions would be considered at a September 4, 2012 hearing. Following a brief hearing on that date presided over by the same judge who had presided over the parties' final divorce hearing, the court issued a September 7, 2012 order that: (1) denied father's motion to modify PR&R; (2) granted mother's motion to modify parent-child contact by giving her physical responsibility for the children during the entire week; and (3) granted mother's motion

to modify legal PR&R by giving her the responsibility for educational matters concerning the children. The court determined that father failed to show that mother's relocation was a substantial change of circumstances warranting a reexamination of the parties' physical PR&R. On the other hand, the court concluded that mother had met her lesser burden of demonstrating a sufficient change of circumstances to alter the parent-child contact and to give her legal responsibility over educational matters in light of her relocation and the children's school enrollment in the town in which she resided.

Father then obtained legal counsel and filed a motion to vacate the court's September 7 order, arguing in part that he had not been given an opportunity at the September 4 hearing to present evidence on his motion to modify PR&R or to contest mother's motion to modify. The superior court treated the motion to vacate as a motion to reopen the motions to modify, and held an evidentiary hearing on October 15, 2012 concerning those motions. The only witnesses that testified at the hearing were the parties and their respective mothers. Following the hearing, on June 28, 2013, the court issued a lengthy decision arriving at the same conclusions as in the September 7 order: mother would have the children during the week with legal responsibility as to educational matters, and father would have the children on weekends, and some additional school vacation and long-weekend time, while retaining all legal PR&R apart from education.

On appeal, father argues that: (1) his denial of due process at the September 4, 2012 hearing was neither addressed nor rectified in the October 15, 2012 hearing, where he had only a limited opportunity to present additional evidence; and (2) mother's relocation, given its impact on the children, represented a real, substantial, and unanticipated change of circumstances warranting a full reexamination of PR&R.

We first consider father's due process argument. Defendant contends that the superior court's September 7 decision to reduce his parent-child contact and to give mother legal responsibility over educational matters constituted a fundamental denial of due process, given that he was not on notice that the September 4 hearing would address the motions to modify, and that he had no opportunity to present evidence at that hearing. In addition, he contends that at the subsequent October 15 hearing, the court refused to allow his attorney to conclude the examination of his mother or to present other witnesses and evidence. Father states that when he read the court's decision following the October 15 hearing, he concluded that "the court merely fashioned a means by which to arrive at what appears to have been a predetermined end consistent with the court's previous findings and conclusions, based upon limited evidence that failed to properly consider in any meaningful way the impact of appellee's relocation on the parties' children."

We find no merit to this argument. Our review of the record indicates that father was given a full and fair opportunity at the October 15 hearing to examine witnesses and present evidence in support of his motion to modify. Father's counsel had an opportunity to question father's mother and in fact indicated at the end of his examination that he had no further questions for her. At the conclusion of the hearing, which covered 183 transcript pages, father's counsel stated that "just for the record, I have other witnesses that I would have liked to have presented . . . as to the substantive impact that this relocation has created for the children." But rather than make a specific proffer or to request additional time or another hearing to present specific witnesses, he went on to ask the court to address issues surrounding the transfer of the children between parties. This lone statement of counsel at the conclusion of the hearing does not demonstrate a violation of due process. Nor do his contentions in his brief that the court

2

inadequately addressed in its decision issues surrounding the impact of the relocation on the children.

Father's principal argument on appeal is that, in the context of the surrounding circumstances, mother's relocation represented a real, substantial, and unanticipated change of circumstances warranting a reexamination of physical rights and responsibilities. For the reasons stated below, we find this argument unavailing. "[U]pon a showing of real, substantial and unanticipated change of circumstances," the superior court "may" modify an order involving physical rights and responsibilities "if it is in the best interests of the child." 15 V.S.A. § 668(a). "[S]everal general principles have emerged from our previous relocation cases that address the statutory test requiring a threshold showing of real, substantial and unanticipated changed circumstances before parental rights and responsibilities can be modified based on the children's best interests." Hawkes v. Spence, 2005 VT 57, ¶ 9, 178 Vt. 161. One principle is that "relocation without more is not per se a substantial change of circumstances," deBeaumont v. Goodrich, 162 Vt. 91, 97 (1994), given "the physical custodian['s] . . . right to determine the children's residence." Hawkes, 2005 VT 57, ¶ 9; see Habecker v. Giard, 2003 VT 18, ¶ 6, 175 Vt. 489 (mem.) ("[R]elocation alone does not automatically constitute a change of circumstances."). "Rather, whether a relocation or other change is substantial enough to meet the threshold must be determined in the context of all the surrounding circumstances, keeping in mind that the effect on the child is what makes a change substantial." Hawkes, 2005 VT 57, ¶ 10. Under the ALI Principle adopted in Hawkes, "relocation is a substantial change of circumstances justifying a reexamination of parental rights and responsibilities 'only when the relocation significantly impairs either parent's ability to exercise responsibilities the parent has been exercising or attempting to exercise under the parenting plan.' " 2005 VT 57, ¶ 13 (quoting ALI Principles of the Law of Family Dissolution § 2.17(1) (2002)). There is no precise formula for determining when a parent's ability to exercise parental responsibilities has been impaired, but the court should consider factors such as the amount of actual custodial responsibility that each parent has been exercising and for how long, the distance and duration of the move, and the availability of alternative visitation arrangements. Hawkes, 2005 VT 57, ¶ 13.

In this case, we conclude that the superior court acted within its discretion in weighing these and other factors before determining that father failed to meet his threshold burden of showing a real, substantial and unanticipated change of circumstances warranting a reexamination of physical rights and responsibilities. See Lane v. Shenck, 158 Vt. 489, 494 (1992) ("The threshold determination for a motion to modify is discretionary . . . ."). As a preliminary matter, we note that when the parties were divorced, they were living approximately 12 miles apart, with father in the marital home in Chelsea, and mother at her mother's house with the children. As the court stated in the final divorce order, the parties were likely to move again, particularly given the fact that mother and the children were temporarily living with her mother until she could get on her feet financially. In fact, both parties moved relatively soon after the divorce. In its October 15 order, the court took judicial notice that North Ferrisburgh, where mother had moved, is 60 miles from Barre, where father was living. The court also noted that father's employment was only a 30-minute drive from the children's new school in Ferrisburgh. Thus, as the court pointed out, this case does not involve an out-of-state relocation that would necessarily entail complicated and expensive transportation. Cf. Fossum v. Fossum, 545 N.W.2d 828, 832 (S.D. 1996) (holding that mother's relocation 70 miles away was too "insignificant" to create substantial change of circumstances); Reeves-Weible v. Reeves, 995 S.W.2d 50, 61 (Mo. Ct. App. 1999) (holding that custodial parent's 49-mile move from non-custodial parent was not sufficient to constitute substantial change of circumstances).

3

Regarding the ALI factors, the superior court determined that mother's relocation would allow the parties, except for the mid-week transition, to continue the parent-child schedule that they had followed since their divorce. Mother would have the children during the week when they were in school and she was not working, and father would have the children on weekends when he was not working. The court noted father's general lack of availability to the children during the week with his long work hours, and mother's history of working on weekends and being available for the children during the week. The court indicated that it would make up the lost mid-week time for father by allowing him to have the children for February vacation and for any three-day weekends during the school year. In short, the court determined that mother's move to Ferrisburgh would not significantly impact the parties' parent-child schedule, and thus father had failed to meet his threshold burden of showing a real, substantial and unanticipated change of circumstances.

Father, however, attacks the court's finding that the parties had closely followed the parent-child contact schedule set forth in the final divorce order. Citing his examination of mother's mother, he claims that mother left the children in the care of her mother for several months after she moved to Starksboro. We find support in the record for the court's finding. Father himself acknowledged at the September 4 hearing that after he moved to Barre the parties continued to follow the court-ordered parent-child-contact schedule. Although at one point at the October 15 hearing mother's mother testified that mother dropped the children off with her on Sunday night and left them with her through Tuesday, her testimony was ambiguous as to how much time, if any, mother spent with the children at her home on those days during that period. For her part, mother testified that she had the children stay with her mother after she moved to Starksboro because she wanted them to finish the school year at the same school, but that she went back to her mother's house on Monday and Tuesday nights to be with the children. In any event, during that transition period mother continued to be responsible for the children in working out an arrangement with her mother while the children finished the school year and she tried to get settled. These facts do not detract from the court's basic finding that the parties followed the court-ordered parent-child-contact schedule.

Father also criticizes, in the context of his challenge to the denial of his motion to modify, the court's decision to award mother legal responsibility on educational matters. Father argues that the evidence overwhelmingly demonstrates that he was best suited to make decisions regarding the children's education, as he had done in the past. He asserts that the court in effect punished him for asserting his court-ordered legal right to have the children attend school in the Barre Town school district, which was plainly in their best interest. Again, we find these arguments unavailing. The record supports the court's concern that if father retained the legal responsibility for educational decisions, he would enroll the children in the Barre Town school district despite the negative impact on the children of having to get up at 5:30 in the morning and spend upwards of three hours in the car each school day. The court did not require an expert to determine that such a situation would not be in the children's best interests. Indeed, father himself at the August 27 hearing acknowledged that "an hour and a half drive [to take] a kid to and from school is absolutely not . . . in their best interest."

In sum, the court took into account the appropriate factors and acted within its discretion in determining that, considering all of the circumstances, mother's in-state relocation did not

4

amount to a real, substantial, and unanticipated change of circumstances warranting a reexamination of PR&R.[*]

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice

---

[*] We need not consider father's motion to strike pages 31-36 of mother's printed case insofar as we have not relied upon those documents in affirming the superior court's decision.