NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 15

No. 2017-321

| | |
|---|---|
| Katie E. Churchill Bonk | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Family Division |
| | |
| Landon Bonk | January Term, 2018 |

Martin A. Maley, J.

Cynthia L. Broadfoot of Broadfoot, Attorneys at Law, Burlington, for Plaintiff-Appellant.

Julie A. Frame and Joshua Stern (Law Clerk) of Hoff Curtis, Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** This case considers whether a trial court can modify parental rights and responsibilities when one parent is relocating if that issue is not expressly raised by motion and the sole motion before the court is the relocating parent's motion to modify parent-child contact. Katie Churchill (mother) appeals a trial court decision that transferred the right to choose the children's residence and school from her to Landon Bonk (father) and that reconfigured the parties' existing contact schedule, reducing her time with her children from approximately 65% to 20%. We hold that mother's motion to modify parent-child contact and father's motion to dismiss in response did not raise the issue of the parties' parental rights and responsibilities. Therefore, the trial court abused its discretion by issuing an order modifying parental rights and responsibilities. We further hold that the proceedings below support finding a sufficient change

of circumstances to grant mother's motion to modify parent-child contact. Accordingly, we reverse and remand for the trial court to set a new parent-child contact schedule.

¶ 2. The parties divorced in August 2016. They have two children, born in July 2011 and May 2013. The parties resided in Enosburg during their marriage, and their oldest child attended school in the Enosburg district. Father remained in the marital residence after the divorce, while mother moved in with a friend in St. Albans. Both children continued to attend the same care and educational programs they attended prior to the divorce. The final divorce order, which was based on the parties' stipulation, provided that the parties would share physical and legal rights and responsibilities. The order and underlying stipulation further provided that the children's primary residence would be with mother and that they would attend school in the town where mother resided, with the sole exception that the children would not be placed in the St. Albans town or city schools. Mother retained the sole right to decide where the children would attend school.

¶ 3. The parties' divorce order also included a biweekly parent-child contact schedule. According to this schedule, in the first week father exercised parent-child contact from Wednesday after school until the beginning of school on Thursday and on Friday after school until late Sunday afternoon. In the second week, father exercised parent-child contact from Wednesday after school until the start of school on Friday. At all other times, the children were with mother. The parties shifted the schedule by agreement so that father exercised parent-child contact Thursday through Sunday in week one, and Tuesday and Wednesday in week two. This alteration did not change the number of overnights that either party had with the children. The trial court found that father had the children for five nights over two weeks, or 35.7% of overnights, under both the original agreement and the agreement as followed by the parties.

¶ 4. In December 2016, mother notified father that she intended to purchase a home in Proctor. Mother suggested altering the parent-child contact schedule to reduce midweek travel and transitions. Father's attorney subsequently sent mother's attorney a letter objecting to both

mother's intended move and any change to the parties' current parent-child contact schedule. Mother purchased a home in Proctor in February 2017. The same month, she filed a motion to modify the parent-child contact schedule. Father filed a motion to dismiss mother's motion, arguing, in essence, that there was no change of circumstances to support altering the schedule because mother's move was avoidable, and, if mother's motion was denied, she would likely stay in Franklin County and any change to the parent-child contact schedule would be unnecessary. In this motion, father stated that he had "never consented to or approved of his children being moved away from Franklin County, the place where he lives and works; where the parties lived during the marriage; where the children have lived their whole lives; and where [mother] has lived her whole life."

¶ 5. The parties appeared before the trial court for a thirty-minute hearing in May 2017, at which they agreed upon an interim schedule that reduced midweek transitions and travel time for the children and allowed their oldest child to finish the school year in Enosburg. The parties returned to the court for a two-hour hearing in June. During both the June hearing and a subsequent hearing in July, father's attorney argued that a proposed change in parent-child contact necessarily invoked a review of parental rights and responsibilities. To that end, she elicited testimony regarding the best interests of the children for purposes of a parental rights and responsibilities analysis. Mother's attorney repeatedly objected on the ground that the matter before the court was mother's motion to modify parent-child contact and father's opposing motion to dismiss—neither party had filed a motion to modify parental rights and responsibilities. Mother's attorney further stated that the reason for the hearing was to determine an amendment to the parties' current parent-child contact schedule that would enable father to retain the same percentage of time with the children while also minimizing travel and transitions for the children. The court did not determine the scope of the issues before it at that time, though later in the same hearing and following another objection, the court stated that it would reserve on the issue of scope, allow the testimony to continue, and make a determination at the end regarding the facts and factors to be considered.

3

Mother's attorney continued to object to testimony directed at the parental rights and responsibilities analysis rather than the modification of parent-child contact. The trial court overruled these objections. Mother's attorney did elicit testimony from mother about the impact a change of physical responsibility would have on the children.

¶ 6. Both parties submitted proposed findings of fact and conclusions of law after the July hearing. Father's proposed conclusions of law included two suggested alternatives. First, the court could deny mother's motion to modify parent-child contact in reliance on mother's testimony that she would remain in Franklin County if the court denied her motion.[1] Second, father argued, the court could modify the parent-child contact schedule so that the children would live primarily with him and mother would exercise parent-child contact and also change the divorce order's provision giving mother sole right to choose the children's residence and school. Father argued that the evidence presented included consideration of parental rights and responsibilities, not simply parent-child contact, and that under Vermont Rule of Civil Procedure 15(b) the court should consider father's initial motion to dismiss amended to conform to the evidence presented and to raise the issue of parental rights and responsibilities. Mother's proposed findings of fact and conclusions of law asked the court to modify the current parent-child contact schedule such that father retained the same percentage of time with the children, but his parent-child contact was not scheduled midweek.

¶ 7. The trial court issued a decision that modified parental rights and responsibilities, deciding initially that the court was not limited to considering a parent-child contact modification

---

[1] It is not uncommon in some relocation cases for the opposing party to ask the relocating parent whether he or she will relocate if the court denies that party's motion to modify parent-child contact or parental rights and responsibilities. We note first that this question is speculative. But also, this is a very problematic question for a parent in this position. If the relocating parent answers this question in the affirmative, it invites an argument by the other parent that the relocating parent is willing to leave the children behind. If the relocating parent answers this question in the negative, he or she runs the risk of the court determining that there is no current controversy. Given our resolution of this case, we need not definitively address whether this question is permissible.

4

only. Instead, it could consider whether there had been a real, substantial, unanticipated change in circumstances and whether the best interests of the children required a change in the underlying order's disposition of parental rights and responsibilities. The court then found a real, substantial, and unanticipated change of circumstances and engaged in a best interest analysis under 15 V.S.A. § 665. The court subsequently transferred the portion of physical rights and responsibilities that allowed mother to choose the children's primary residence and to select their school to father but otherwise retained the parties' shared physical and legal rights and responsibilities. The court granted mother parent-child contact three weekends of each month from early Friday evening to late Sunday afternoon, with school vacations shared between the parties. This appeal followed.

¶ 8. In general, "[t]he family court has broad discretion both in assessing whether there has been a change in circumstances and in evaluating what parenting arrangement is in a child's best interests." Quinones v. Bouffard, 2017 VT 103, ¶ 10, __ Vt. __, __ A.3d __ (quotation omitted). This Court will uphold the lower court's factual findings unless, "viewing the record in the light most favorable to the prevailing party and excluding the effect of modifying evidence, there is no credible evidence to support the findings." Id. (quotation omitted). We will also uphold the court's legal conclusions if those conclusions are supported by the court's findings of fact. Id.

¶ 9. The family court concluded that a real, substantial, and unanticipated change of circumstances had occurred. See 15 V.S.A. § 668(a) ("[U]pon a showing of real, substantial and unanticipated change of circumstances, the court may annul, vary, or modify an order made under this subchapter if it is in the best interests of the child . . . ."). The court found in this case that mother had purchased a home in Proctor, moved to that town, and was starting a business in Rutland. As a practical matter, the court concluded that mother's move made it impossible for father to continue to exercise midweek parent-child contact. This conclusion is derived from two primary factors, neither of which is in dispute—mother's move was for an indefinite duration and the parties agreed that a two-and-a-half-hour drive separated their homes. Given these facts, we agree with the trial court that the parties' current parent-child contact schedule was no longer

5

feasible. Mother's move to Proctor constitutes a real, substantial, and unanticipated change of circumstances for the purpose of her motion to modify parent-child contact.

¶ 10. But our agreement with the trial court on this point does not mean that we agree that the trial court could then consider modifying parental rights and responsibilities. The family court's decision on this point flowed from the court's legal conclusion that the parties' parental rights and responsibilities were at issue—that legal conclusion was erroneous.

¶ 11. As noted above, father argued that V.R.C.P. 15(b) would permit the court to amend his initial motion, which requested dismissal of mother's motion, to the effect that his motion could be read as expressly raising parental rights and responsibilities. The trial court did not refer to V.R.C.P. 15(b) in its decision, though the decision does note that father expressly requested a change in custody in his post-hearing proposed findings of fact and conclusions of law. The court also relied on an unpublished three-justice decision of this Court for the proposition that " '[t]he fact that father did not expressly ask for 'sole' or 'legal' rights and responsibilities [does] not divest the court of its discretion to award such rights and responsibilities to father,' should the facts so warrant the change in the best interests of the children." See Zalot v. Bianchi, No. 2005-411, 2006 WL 5866285, at *1 (Vt. May 1, 2006) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/ documents/eo05-411.pdf. Decisions from a three-justice panel of this Court are not precedential and, therefore, Zalot cannot control the trial court's decision and we need not consider it. V.R.A.P. 33.1(d) (explaining that except in narrow circumstances, none of which applies here, "[a]n unpublished decision by a three-justice panel may be cited as persuasive authority but is not controlling precedent").[2]

---

[2] Indeed, Zalot v. Bianchi can be easily distinguished. In that relocation case, the trial court had before it both mother's motion to modify parent-child contact and father's motion to modify parental rights and responsibilities. Father's motion requested an unspecified modification of parental rights and responsibilities and the court eventually awarded him sole legal and physical rights and responsibilities. Mother argued that because father did not make a specific request for sole rights, the court was precluded from modifying the order in the manner it did. Id. at *1. We held that father's motion put the issue of parental rights and responsibilities properly before the court and that this provided adequate notice to mother that parental rights and responsibilities were

¶ 12.    Vermont Rule of Civil Procedure 15(b) provides that:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.  Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.  If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

This Court has favored a liberal construction of this rule, permitting, for example, an amendment to the pleadings to add a new cause of action after the parties had filed motions for summary judgment.  See LeClair v. LeClair, 2017 VT 34, ¶ 35, __ Vt. __, 169 A.3d 743.  But the plain language of the rule includes a defining limitation on this liberal construction—the issues to be added by amendment must be "tried by express or implied consent of the parties."  V.R.C.P. 15(b).  Thus, we have permitted amendment to the pleadings after the parties have filed motions for summary judgment only where the issue to be added was not only explored at length in each party's pretrial discovery, but also implicitly addressed in each party's motion for summary judgment.  LeClair, 2017 VT 34, ¶¶ 31-33.

¶ 13.    A party's objection to evidence or testimony on the ground that the evidence or testimony is unrelated to the issues in the pleadings is a strong indication that the party neither expressly nor impliedly consents to trial of that issue.  See Molleur v. Leriche, 142 Vt. 620, 622, 458 A.2d 1139, 1140 (1983) (holding issue could not be included in jury charge because issue not expressly or impliedly tried by parties where party objected to issue's inclusion in charge).  More importantly, "[i]f a party attempts to introduce evidence at trial regarding an issue not addressed

---

at issue.  Id. at *2-3.  Unlike the circumstances here, the trial court had before it a properly filed motion to modify parental rights and responsibilities.

7

in the pleadings, and the opposing party objects, the party seeking to admit the evidence must move for an amendment of the pleadings." Withington v. Derrick, 153 Vt. 598, 605, 572 A.2d 912, 915 (1990). But see Chase v. Bowen, 2008 VT 12, ¶ 20, 183 Vt. 187, 945 A.2d 901 (affirming decision reconfiguring physical and legal rights and responsibilities "because [mother's] own motion to modify [parental rights and responsibilities] put the custody and contact order, as well as her parenting ability, in issue"). According to the plain language of V.R.C.P. 15(b), upon objection to the inclusion of evidence on grounds that the evidence is beyond the issues in play, the party seeking to admit evidence must seek an amendment to the pleadings. The amendment shall be "freely" permitted unless the objecting party can demonstrate that the amendment would be prejudicial. V.R.C.P. 15(b).

¶ 14. As noted above, mother repeatedly objected to father's testimony related to changing the parties' parental rights and responsibilities disposition. For example, mother's attorney stated: "Had father filed a motion to modify rights and responsibilities, I agree that all of these issues would be on the table and we should be spending time going into all of these things, but there is no motion. It's merely a question about the modification of parent-child contact." The court declined to decide whether parental rights and responsibilities were at issue, but allowed testimony directed at that issue to continue and likewise continued to overrule mother's ongoing objections to this line of testimony. Under these circumstances and the clear direction of Rule 15(b), the appropriate course of action would have been for the family court to consider and decide whether parental rights and responsibilities were at issue when mother initially objected. Father should have moved at that time to amend his motion to dismiss to include a motion to modify parental rights and responsibilities. Absent either an amendment or a clear decision from the court regarding parental rights and responsibilities, it was an abuse of discretion for the court to reach this issue in its final decision, based on only the after-the-fact request in father's proposed findings. See LeClair, 2017 VT 34, ¶ 27 ("We review denial of a motion to amend a pleading for abuse of

8

discretion.").[3]  The only issue properly before the court was mother's motion to modify parent-child contact.[4]  As noted above, we find that mother has established the requisite change of circumstances and the court must now issue a modified schedule of parent-child contact given mother's relocation to Proctor.[5]

<u>Reversed and remanded for the family court to set a new parent-child contact schedule.</u>

FOR THE COURT:

_____

Associate Justice

¶ 15.  **SKOGLUND, J., dissenting.**  I dissent.  Having found the trial court did not err in finding that mother's move to Proctor constitutes a real, substantial, and unanticipated change of circumstances for the purpose of mother's motion to modify parent-child contact, the majority then decides the court lacked authority to adjust the parent-child contact as it did.  On the basis that father did not file a motion to modify parental rights and responsibilities (PR&R) in response to mother's motion to modify parent-child contact, the majority holds that without such a pleading,

---

[3]  We agree with the dissent that if the parties shared all physical rights and responsibilities equally, a decision by mother to relocate would necessarily have invoked an examination of parental rights and responsibilities, since the parties would no longer be in a position to share undivided physical rights.  See <u>post</u>, ¶ 24.  However, here, mother held the specific, sole right to decide where the children would live with her and the schools they would attend.  As a result, mother's relocation would not have altered any portion of physical rights and responsibilities awarded to father.  As the dissent points out, citing <u>Hawkes v. Spence</u>, 2005 VT 57, ¶ 12, 178 Vt. 161, 878 A.2d 273, a change in parental rights and responsibilities is implicated when relocation significantly impairs either parent's ability to exercise responsibilities the parent had been exercising.  Here, mother, not father, had exclusive authority to choose where the children resided and attended school.  In addition, the parties' time with the children was not close to fifty percent.

[4]  Our decision in this case should not be construed as precluding the family court from consideration of future motions from either party.

[5]  Mother filed a motion to stay the family court's judgment just before this Court's consideration of this appeal.  Because we have remanded for the court to set a new parent-child contact schedule that takes into account mother's relocation to Proctor, mother's motion is moot.

the court lacked authority to modify legal rights and responsibilities awarded to mother in the divorce.

¶ 16.    This decision elevates form over substance and ignores the court's responsibility to adjust the parties schedule as required for the best interests of the children due to the substantial change in circumstances found.  It is true that father never filed a motion to modify PR&R, but he did present evidence to support such an action and, in his post-hearing proposed findings, he argued that such a change was necessary to preserve his shared rights to parent his children.

¶ 17.    In his proposed findings of fact and conclusions of law, father argued that in their final stipulation the parties agreed to share legal and physical parental rights and responsibilities of the children except that mother retained the right to decide where the children would attend school.  He noted that the stipulation further provided that "[n]either parent will do anything to interfere or impede the other parent's relationship with the children," and that mother had violated the provision by attempting to remove the children from their life in Franklin County.  And, while he did not file a motion to modify PR&R, he points out that " '[p]arental rights and responsibilities' means the rights and responsibilities related to a child's physical living arrangements, parent contact, education, medical and dental care, religion, travel and any other matter involving a child's welfare and upbringing." 15 V.S.A. § 664(1) (emphasis added).  Section 664(2) defines "[p]arent child contact" as "the right of a parent who does not have physical responsibility to have visitation with the child."  Again, here, father has shared physical responsibility for the children.

¶ 18.    He went on to argue that, if a change of circumstances does exist, and the current parent-child contact schedule cannot be maintained, the court needs to determine what manner of modification is in the best interest of the children: "should they move with mother . . . or should they, rather, remain primarily with their father . . . . the Court must consider all available options in arriving at its decision."  He argues that, in this case, the shared-parenting, rather than sole-custodian, legal framework applies.  In his proposed findings, he continued to urge the court to leave in place the current schedule.  However, he posited, if the court decided on a modification

10

to facilitate mother's relocation, the evidence showed the best interests of the children would require granting primary residence to father—accordingly, father moved for such a modification in the alternative.

¶ 19.    Neither party argued to the court with great clarity their positions on what was at issue in the case.   The interactions of the parties and the court at the hearings on mother's motion continued to bounce between the requirements for finding a change in circumstances for PR&R and parent-child contact.  Father's proposed findings suffer from a similar disjointed approach. However, it is clear father asked that if the court determined some modification was required, the court "consider the possibility of modifying the parental rights and responsibilities and parent child contact to allow the children to remain primarily in Franklin County with [father]" and that, "[i]f necessary, the pleadings should be amended to conform to the evidence presented, and [father]'s Motion should be considered to relate back to his initial Motion in Opposition in this case."

¶ 20.    It is worth noting that in her response to father's proposed findings and conclusions of law, mother does not take issue with his request to change the children's primary residence or decision-making on school choice on the basis that he failed to file a proper motion to modify PR&R, or to his request that the court treat his motion in opposition as a motion to modify PR&R.

¶ 21.    First, I cannot understand how this case differs from our decision in Chase v. Bowen, 2008 VT 12, 183 Vt. 187, 945 A.2d 901.  In Chase, the parties shared PR&R.  The mother moved to modify PR&R to give her sole custody.  At the beginning of the hearing, all parties agreed that the only motion before the court was mother's motion to modify.  Halfway through the first day of the final hearing, the father began to question the mother about her parenting style and decisions.  The mother's and the children's attorneys objected to the relevance and scope of the questions.  The "[f]ather did not file a motion for custody, but the court allowed the questions, reasoning that since the mother was seeking to modify the existing shared custody arrangement, the court had to construct a new custody order based on the children's best interests and thus mother's parenting capacity was relevant."  Id. ¶ 17.  After the hearing, the court awarded the

mother sole physical rights and the father sole legal rights for their two sons. Id. ¶ 13. This Court affirmed the reconfiguration of PR&R "because [the mother's] own motion to modify [parental rights and responsibilities] put the custody and contact order, as well as her parenting ability, in issue." Id. ¶ 20.

¶ 22. Here, mother and father shared physical and legal rights and responsibilities for their two children. The order of divorce, based on a stipulation of parties, approved the parties' agreement that they "shall share physical and legal parental rights and responsibilities for their minor children, except that [mother] shall retain the sole right to decide where the children will attend school." The parties' stipulation goes on to state that "the children shall have their primary residence with [mother] and shall attend school in the town where she resides provided she does not reside in St. Albans City or Town. The parties have agreed that the children shall not attend school in St. Albans City or Town." I agree that under the parties' stipulation, mother had the "sole right" to decide what school the children would attend, apparently awarding mother that discrete element of legal rights and responsibilities.

¶ 23. However, with shared PR&R in place, father had reasonable expectations that his involvement with his children would continue as originally agreed. On paper, mother's motion to modify the contact schedule did not seek to divest father of his physical and remaining legal rights and responsibilities. But, creating a two-and-a-half-hour driving distance between father and children requires a modification to his role in his children's lives. It was necessary for the court to decide the issues in a manner that was best for the children, evaluating their situation by reviewing all the factors set forth in the statutes. That is what the court did.

¶ 24. The court considered the "heavy burden" threshold in modifying the existing custodial arrangement and analyzed whether it was limited to considering only legal rights and responsibilities or issues of parent-child contact. It looked to our case law in its analysis. In Hoover v. Hoover, we opined that "when childrearing and its concomitant decision-making are shared, relocation to a remote location by one parent requires at the very least a reassessment of

12

the custodial arrangement and, because of the practicalities involved in shared parenting, will often necessitate a change in custody." 171 Vt. 256, 259, 764 A.2d 1192, 1194 (2000). Relying on Hoover, in Hawkes v. Spence, "we instructed the family court not to necessarily rely on the custodial assignments in the final divorce order, but rather to consider the parties' actual parenting arrangement." 2005 VT 57, ¶ 12, 178 Vt. 161, 878 A.2d 273. We held that "relocation is a substantial change of circumstances justifying a reexamination of parental rights and responsibilities 'only when the relocation significantly impairs either parent's ability to exercise responsibilities the parent has been exercising or attempting to exercise under the parenting plan.' " Id. ¶ 13 (quoting ALI Principles of the Law of Family Dissolution § 2.17(1) (2002)). It is important to note that in Hawkes, the mother held sole legal parental rights and responsibilities and the parties shared physical responsibility.

¶ 25. Ultimately, the court here properly modified the legal right to determine what school the children would attend, transferring that responsibility from mother to father. It further found it in the children's best interest to transfer their primary residence to father. It then crafted a new parent-child contact schedule.

¶ 26. I would affirm.

¶ 27. I am authorized to state that Chief Justice Reiber joins this dissent.

_____
Associate Justice

13