SKOGLUND, J., dissenting.
¶ 15. I dissent. Having found the trial court did not err in finding that mother's move to Proctor constitutes a real, substantial, and unanticipated change of circumstances for the purpose of mother's motion to modify parent-child contact, the majority then decides the court lacked authority to adjust the parent-child contact as it did. On the basis that father did not file a motion to modify parental rights and responsibilities (PR & R) in response to mother's motion to modify parent-child contact, the majority holds that without such a pleading, the court lacked authority to modify legal rights and responsibilities awarded to mother in the divorce.
¶ 16. This decision elevates form over substance and ignores the court's responsibility to adjust the parties schedule as required for the best interests of the children due to the substantial change in circumstances found. It is true that father never filed a motion to modify PR & R, but he did present evidence to support such an action and, in his post-hearing proposed findings, he argued that such a change was necessary to preserve his shared rights to parent his children.
¶ 17. In his proposed findings of fact and conclusions of law, father argued that in their final stipulation the parties agreed to share legal and physical parental rights and responsibilities of the children except that mother retained the right to decide where the children would attend school. He noted that the stipulation further provided that "[n]either parent will do anything *608 to interfere or impede the other parent's relationship with the children," and that mother had violated the provision by attempting to remove the children from their life in Franklin County. And, while he did not file a motion to modify PR & R, he points out that " '[p]arental rights and responsibilities' means the rights and responsibilities related to a child's physical living arrangements, parent child contact, education, medical and dental care, religion, travel and any other matter involving a child's welfare and upbringing." 15 V.S.A. § 664(1) (emphasis added). Section 664(2) defines "[p]arent child contact" as "the right of a parent who does not have physical responsibility to have visitation with the child." Again, here, father has shared physical responsibility for the children.
¶ 18. He went on to argue that, if a change of circumstances does exist, and the current parent-child contact schedule cannot be maintained, the court needs to determine what manner of modification is in the best interest of the children: "should they move with mother ... or should they, rather, remain primarily with their father .... the Court must consider all available options in arriving at its decision." He argues that, in this case, the shared-parenting, rather than sole-custodian, legal framework applies. In his proposed findings, he continued to urge the court to leave in place the current schedule. However, he posited, if the court decided on a modification to facilitate mother's relocation, the evidence showed the best interests of the children would require granting primary residence to father-accordingly, father moved for such a modification in the alternative.
¶ 19. Neither party argued to the court with great clarity their positions on what was at issue in the case. The interactions of the parties and the court at the hearings on mother's motion continued to bounce between the requirements for finding a change in circumstances for PR & R and parent-child contact. Father's proposed findings suffer from a similar disjointed approach. However, it is clear father asked that if the court determined some modification was required, the court "consider the possibility of modifying the parental rights and responsibilities and parent child contact to allow the children to remain primarily in Franklin County with [father]" and that, "[i]f necessary, the pleadings should be amended to conform to the evidence presented, and [father]'s Motion should be considered to relate back to his initial Motion in Opposition in this case."
¶ 20. It is worth noting that in her response to father's proposed findings and conclusions of law, mother does not take issue with his request to change the children's primary residence or decision-making on school choice on the basis that he failed to file a proper motion to modify PR & R, or to his request that the court treat his motion in opposition as a motion to modify PR & R.
¶ 21. First, I cannot understand how this case differs from our decision in Chase v. Bowen, 2008 VT 12, 183 Vt. 187, 945 A.2d 901. In Chase, the parties shared PR & R. The mother moved to modify PR & R to give her sole custody. At the beginning of the hearing, all parties agreed that the only motion before the court was mother's motion to modify. Halfway through the first day of the final hearing, the father began to question the mother about her parenting style and decisions. The mother's and the children's attorneys objected to the relevance and scope of the questions. The "[f]ather did not move for custody, but the court allowed the questions, reasoning that since mother was seeking to modify the existing shared custody arrangement, the court had to construct a *609 new custody order based on the children's best interests and thus mother's parenting capacity was relevant." Id. ¶ 17. After the hearing, the court awarded the mother sole physical rights and the father sole legal rights for their two sons. Id. ¶ 13. This Court affirmed the reconfiguration of PR & R "because [the mother's] own motion to modify [parental rights and responsibilities] put the custody and contact order, as well as her parenting ability, in issue." Id. ¶ 20.
¶ 22. Here, mother and father shared physical and legal rights and responsibilities for their two children. The order of divorce, based on a stipulation of parties, approved the parties' agreement that they "shall share physical and legal parental rights and responsibilities for their minor children, except that [mother] shall retain the sole right to decide where the children will attend school." The parties' stipulation goes on to state that "the children shall have their primary residence with [mother] and shall attend school in the town where she resides provided she does not reside in St. Albans City or Town. The parties have agreed that the children shall not attend school in St. Albans City or Town." I agree that under the parties' stipulation mother had the "sole right" to decide what school the children would attend, apparently awarding mother that discrete element of legal rights and responsibilities.
¶ 23. However, with shared PR & R in place, father had reasonable expectations that his involvement with his children would continue as originally agreed. On paper, mother's motion to modify the contact schedule did not seek to divest father of his physical and remaining legal rights and responsibilities. But, creating a two-and-a-half-hour driving distance between father and children requires a modification to his role in his children's lives. It was necessary for the court to decide the issues in a manner that was best for the children, evaluating their situation by reviewing all the factors set forth in the statutes. That is what the court did.
¶ 24. The court considered the "heavy burden" threshold in modifying the existing custodial arrangement and analyzed whether it was limited to considering only legal rights and responsibilities or issues of parent-child contact. It looked to our case law in its analysis. In Hoover v. Hoover, we opined that "when childrearing and its concomitant decision-making are shared, relocation to a remote location by one parent requires at the very least a reassessment of the custodial arrangement and, because of the practicalities involved in shared parenting, will often necessitate a change in custody." 171 Vt. 256, 259, 764 A.2d 1192, 1194 (2000). Relying on Hoover, in Hawkes v. Spence"we instructed the family court not to necessarily rely on the custodial assignments in the final divorce order, but rather to consider the parties' actual parenting arrangement." 2005 VT 57, ¶ 12, 178 Vt. 161, 878 A.2d 273. We held that "relocation is a substantial change of circumstances justifying a reexamination of parental rights and responsibilities 'only when the relocation significantly impairs either parent's ability to exercise responsibilities the parent has been exercising or attempting to exercise under the parenting plan.' " Id. ¶ 13 (quoting ALI Principles of the Law of Family Dissolution § 2.17(1) (2002) ). It is important to note that in Hawkes the mother held sole legal parental rights and responsibilities and the parties shared physical responsibility.
¶ 25. Ultimately, the court here properly modified the legal right to determine what school the children would attend, transferring that responsibility from mother to father. It further found it in the children's best interest to transfer their primary residence *610 to father. It then crafted a new parent-child contact schedule.
¶ 26. I would affirm.
¶ 27. I am authorized to state that Chief Justice Reiber joins this dissent.